relating to Budd's marketing efforts; (c) a complete copy of emails and correspondence generated for marketing purposes, including emails sent from Budd's Company email account or routed through a separate server; (d) copies of all electronic documentation generated by Budd relating to Tesla business; (e) copies of all bids, proposals, and inquiries involving potential Tesla opportunities; and (f) a report summarizing Budd's sales effort, with relevant contact information. Tesla also reminded Budd to turn over all Company computers and devices prior to his departure.

36. On May 2, 2014, Tesla formally responded to Budd's letter of resignation, a copy of which is attached hereto as Exhibit D.

37. In its May 2nd letter, Tesla accepted Budd's resignation but expressly rejected his proposition that his resignation was for "Good Cause."

38. Budd was permitted to resign from Tesla for "Good Reason" for one of four expressly enumerated grounds set forth in the Employment Agreement: (a) a transfer or assignment to a position which involves a material reduction in the scope of Budd's duties without his consent; (b) a reduction in Budd's annual base salary or the failure to continue in any incentive compensation or employee benefit plan in which Budd was eligible prior to such reduction; (c) a permanent relocation from the city in which Budd was serving to a place more than 50 miles away without Budd's consent; or (d) "a material breach by Company of any material provision of [the] Agreement which remains uncorrected for thirty (30) days following written notice of such breach by [Budd] to Company."

39. As President of the Company, Budd's duties included ensuring Tesla implemented certain benefit plans on behalf of relevant U.S. employees, including himself. His

failure to fulfill his duties as President directly resulted in the Company not providing these plans to Budd or any other U.S.-based employee.

40.     Budd further failed to provide written notice to the Company of any material breach of the Employment Agreement or provide Tesla with the opportunity to cure as required therein.

41.     In its May 2nd letter, Tesla also reminded Budd of his binding confidentiality, non-interference and non-solicitation obligations under the Employment Agreement. Tesla also again demanded Budd return all Company property and deliver a detailed list of work and/or research conducted while Budd was an employee of the Company.

42.     Subsequent to its May 2nd letter, Tesla discovered that, while President of Tesla, Budd ceased use of his Company email account for sending Company-related emails on or about July 1, 2013, approximately nine (9) months prior to his resignation. Upon information and belief, Budd thereafter used a personal Gmail account to conduct Company business in order to conceal his wrongful conduct, including but not limited to the misappropriation of confidential Company information and trade secrets.

43.     On June 24, 2014, Tesla issued another written demand for the return of all confidential Company information in Budd's possession or control, including any information contained in email stored on Budd's Gmail account. A copy of the correspondence is attached hereto as Exhibit E.

44.     When Budd ended his employment with the Company on May 8, 2014, he took with him confidential Company information subject to the confidentiality provisions of his Employment Agreement, including but not limited to, technical data, research, engineering designs, customer lists, internal pricing information, bids/proposals and inquiries involving

potential Tesla opportunities and sales and marketing materials, along with proprietary software and technology.

45. The confidential Company information taken by Budd was contained on, among other media, external hard drives and USB flash drives paid for and belonging to the Company, as well as a laptop computer purchased by Budd to conduct Company business.

46. Budd, as President, was authorized to purchase Company computers for Tesla's U.S.-based employees. On or about June 29, 2012, Budd purchased a laptop computer (a ThinkPad W530) for himself. The invoice was submitted to accounting, and Budd was fully reimbursed for the purchase. Three months later, on or about September 28, 2012, Budd notified the Chairman of Tesla he had purchased three (3) additional laptop computers for the Company, including another ThinkPad W530. According to Budd, he gave the three-month old laptop to a Company employee and kept the newer Company computer for himself. Budd never sought reimbursement from Tesla for the three (3) additional laptops.

47. Upon information and belief, Budd, in a purposeful and premeditated manner, failed to properly invoice Tesla for the Company computers in order to conceal his unlawful actions and facilitate the later removal of the computers, which contained confidential Company information and trade secrets, from Tesla. Upon his resignation, Budd claimed the laptop in his possession was not Company property. At no time was Tesla aware, nor did it ever approve, of Budd's conversion of his Company computer to one for personal use.

48. Tesla expended a significant amount of time, money and effort to accumulate the confidential Company Information, which was not generally known to Tesla's competitors and customers in the industry.

11

49. To date, Budd has refused to comply with any and all requests made by Tesla regarding the return of all confidential Company information and property in his possession, custody or control.

***Budd's Misconduct Post-Resignation***

50. Upon information and belief, Budd, since his departure from the Company, has continued to misappropriate confidential Company information and interfere with Company relationships for the purposes of pursuing Tesla projects and customers by, among other actions, the planning, purchase, staffing and operation of a competing building façade manufacturing company, to be managed by Budd.

51. The foregoing wrongful conduct occurred while Budd owed non-interference obligations to Tesla under the Employment Agreement.

52. Upon information and belief, Budd, since his departure from the Company, solicited at least two (2) Tesla employees.

53. The foregoing wrongful conduct occurred while Budd owed non-solicitation obligations to Tesla under the Employment Agreement.

## COUNT I
### Breach of the Employment Agreement

54. Tesla realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 53 above.

55. The Employment Agreement specifies the agreement will be construed and enforced in accordance with the laws of the State of Delaware.

56. Tesla fully performed its obligations under the Employment Agreement.

57. Budd breached the terms of the Employment Agreement by taking, and thereafter refusing to return despite repeated written demands, Company records and other critical

12

operational data, information and materials necessary for Tesla to continue operations as a going concern. As a result of Budd's actions, Tesla lost the ability to pursue its ongoing and prospective business opportunities.

58. Budd further breached the terms of the Employment Agreement by taking, and thereafter refusing to return despite repeated written demands, confidential Company information in his possession or control, as alleged in the foregoing Paragraphs 41 and 43-45 of the Complaint herein.

59. Upon information and belief, Budd further breached the terms of the Employment Agreement by using and/or disclosing, during the period he was employed by Tesla and following his employment, "Confidential Information" (as defined in the Employment Agreement) for a purpose other than to benefit the Company and to individuals not authorized by the Company to receive such information.

60. Budd further breached the terms of the Employment Agreement by taking, and thereafter refusing to return despite repeated written demands, Company personal property in his possession or control, including but not limited to, external hard drives and USB flash drives, as well as the content thereof.

61. Upon information and belief, Budd further breached the terms of the Employment Agreement by, during the period he was employed by Tesla and following his employment, interfering with Company current and prospective business relationships by, among other conduct, the planning, purchase, staffing and operation of a competing façade business.

62. Upon information and belief, Budd further breached the terms of the Employment Agreement by, following his employment, soliciting or assisting others in the solicitation of Tesla employees.

63. As a direct and proximate result of these and other breaches of the Employment Agreement, Tesla has suffered and will continue to suffer damages in an amount to be determined at trial.

## COUNT II
### Violation of Delaware Uniform Trade Secrets Act

64. Tesla realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 63 above.

65. The Employment Agreement specifies the agreement will be construed and enforced in accordance with the laws of the State of Delaware.

66. As a result of his role as President of the Company, Budd was in possession of confidential information and trade secrets as defined by the Delaware Uniform Trade Secrets Act, Del. Code § 6-2001 *et seq*.

67. Tesla's trade secrets consist of technical data, internal pricing information, work product, research, engineering designs, product plans, products, services, customer lists, vendor lists, markets, software, developments, inventions, marketing, finances and other information related to Tesla's business model for the design, manufacture and installation of building façade systems, along with vertical integration of said business model into a real estate development company.

68. The foregoing information constitutes trade secrets because Tesla derives independent economic value from such information, which is not generally known nor readily ascertainable by proper means by other persons and was not generally known to Tesla's competitors and/or customers, and because Tesla (through its owners) has taken and continues to take reasonable measures to maintain and protect the value of its confidential information and trade secrets, including requiring all employees with access to confidential Company information

14

24902385_1

and trade secrets to execute employment agreements containing, among other things, confidentiality provisions.

69. Budd has misappropriated Tesla's trade secrets by using and/or disclosing such information without the express or implied consent of Tesla, for his own benefit, in violation of Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001 *et seq.*

70. Budd's misappropriation of Tesla's trade secrets, in circumstances where he knew or had reason to know that he acquired such confidential information under a duty to prevent disclosure, both at common law and pursuant to his Employment Agreement, was willful and malicious.

71. As a result of Budd's misappropriation of Tesla's trade secrets, Tesla has suffered and will continue to suffer damages in an amount to be determined at trial.

72. As a consequence of Budd's willful and malicious trade secret misappropriation, Budd is liable for exemplary damages and reasonable attorney's fees.

## COUNT III
### Misappropriation or Conversion of Confidential Information

73. Tesla realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 72 above.

74. The Employment Agreement specifies the agreement will be construed and enforced in accordance with the laws of the State of Delaware.

75. At all relevant times, Budd was in possession of Tesla's confidential information as interpreted by Delaware law.

76. To the extent it does not constitute a trade secret, Tesla's confidential information consist of technical data, internal pricing information, work product, research, engineering designs, product plans, products, services, customer lists, vendor lists, markets, software,

developments, inventions, marketing, finances and other information related to Tesla's business model for the design, manufacture and installation of building façade systems, along with the vertical integration of said business model into a real estate development company.

77. Tesla made a substantial investment of time, money and effort to create its confidential property consisting of business, marketing, sales, technology and customer information, and as such Tesla has a property interest in such confidential information.

78. Budd misappropriated and/or wrongfully exerted dominion over Tesla's confidential information.

79. As a result of Budd's misappropriation and conversion of Tesla's confidential information, Budd sought to create a competing business and thereby unlawfully take the benefit of Tesla's investment.

80. As a result of Budd's misappropriation of Tesla's confidential information, Tesla has suffered and will continue to suffer damages in an amount to be determined at trial.

## COUNT IV
### Breach of Fiduciary Duty

81. Tesla realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 80 above.

82. The Employment Agreement specifies the agreement will be construed and enforced in accordance with the laws of the State of Delaware.

83. As President of Tesla, Budd was a fiduciary of the Company bound to act in good faith, with honesty in fact and utmost loyalty, and in the best interests of the Company.

84. Budd breached his fiduciary duty owed to Tesla by, among other things: knowingly and intentionally taking Company records and other critical operational data, information and materials necessary for Tesla to continue operations as a going concern;