disclosing and/or using Tesla's confidential information and trade secrets for personal benefit; taking Company property; planning, purchasing, staffing and operating a building façade company to compete with Tesla; interfering with Tesla's current and prospective business relationships; and soliciting Tesla employees.

85.    As a proximate result of Budd's breaches of his fiduciary duties, Tesla has been damaged and continues to be damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Tesla prays for judgment with respect to its Complaint as follows:

A.    With respect to Counts I-IV, granting compensatory and all other damages allowed by law;

B.    With respect to Count II, awarding Tesla exemplary damages pursuant to Del. Code § 6-2003(b), and attorney's fees therefor, pursuant to Del. Code § 5-2004;

C.    With respect to Counts I-IV, an accounting of Tesla's "Confidential Information" (as defined in the Employment Agreement) and personal property in Budd's possession, custody or control;

D.    With respect to Counts I-IV, imposing a constructive trust for the benefit of Tesla upon all funds, assets, revenues and profits Budd has or will derive from his unlawful acts and his misappropriation of Tesla's "Confidential Information" (as defined in the Employment Agreement) and personal property; and

E.    Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Tesla demands a trial by jury on all issues so triable.

17

24902385_1

Dated: New York, New York
       October 27, 2014

Respectfully Submitted,

**SUTHERLAND ASBILL & BRENNAN LLP**

Ronald W. Zdrojeski (RWZ0545)
Lawrence A. Dany III (LD1190)
Heather M. Niemeyer (to be admitted *pro hac vice*)
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York  10036
(212) 389-5000

*Attorneys for Plaintiff*

18

# Exhibit A

TESLA WALLS, LLC

July 02, 2012

VIA ELECTRONIC MAIL

Michael Budd
[Address]

Dear Michael:

On behalf of the Board of Directors of Tesla Walls, LLC (the "**Company**"), I am pleased to offer you (collectively referred to herein as "**You,**" "**Your,**" "**Executive,**" or "**Employee**") the position of President ("**President**"), on the following terms.  Your employment shall commence on a date mutually agreed between You and the Company.

**POSITION**

You will serve in an executive capacity and shall perform the duties of President as commonly associated with this position, as specified in the Bylaws of the Company, and as required by the Board of Directors of the Company (the "**Board**").  You will report to the Board.

You will initially work at the Company's corporate headquarters which for the present are located in Minneapolis, Minnesota, subject to necessary business travel. Subject to the mutual agreement between You and the Company, the corporate headquarters may be relocated. During Your employment with the Company, You will devote Your best efforts and substantially all of Your business time and attention (except for vacation periods and reasonable periods of illness or other incapacity permitted by the Company's general employment policies) to the business of the Company.  The performance of Your duties for the Company shall be subject to the direction, control, and supervision of the Board, provided that such duties are consistent and commensurate with the duties and responsibilities commonly associated with the position of President.

Your employment relationship with the Company shall also be governed by the general employment policies and practices of the Company (except that if the terms of this letter differ from or are in conflict with the Company's general employment policies or practices, this letter will control), and You will be required to abide by the general employment policies and practices of the Company.

**COMPENSATION**

**Base Salary:**  Your initial annual base salary will be $382,500 ("**Base Salary**"), less standard payroll deductions and withholdings.  You will be paid semi-monthly in accordance with Company practice and policy. Your Base Salary shall be periodically reviewed by the Board, but not less than annually, and may be adjusted at the discretion of the Board provided that no such adjustment shall result in a decrease of the Base Salary.



**Annual Performance Bonus:**  In addition, You will be eligible to earn an annual performance bonus of up to forty percent (40%) of Your annual Base Salary, which will be provided in the form of cash compensation.  The annual bonus will be based on achievement of corporate goals and Your performance over the course of the calendar year, and the Board will determine the corporate goals after consultation with You.  On or about the end of the calendar year, the Board will determine whether the corporate goals have been achieved and will evaluate Your work performance, and will determine whether You have earned a bonus and the amount of any such bonus.  The annual bonus, if earned, will be paid no later than March 15 of the calendar year subsequent to the bonus year.  You must be an employee in good standing on the bonus payment date to earn and be eligible to receive a bonus; no partial or prorated bonuses will be provided *except that* the bonus You are eligible to receive for 2012 will be prorated to reflect that period of time during 2012 in which you provided services to the Company.

Your Base Salary and bonus eligibility will be reviewed on at least an annual (or more frequent) basis by the Board (or any authorized committee thereof), and are subject to change in the discretion of the Board (or any authorized committee thereof) consistent with the terms stated herein.

**Senior Management Bonus:**  You will be eligible for a senior management bonus should the Company choose to adopt such a program. While the terms and conditions of any senior management bonus program, to the extent such a program is instituted, would be determined at a future date, the senior management bonus would be based on achievement of corporate goals and Your performance over the course of the applicable period, as determined by the Board. It is expected that, at such time as the bonus program is instituted, Your target bonus range for achieving corporate goals established by the Board would be an amount equal to 80% to 120% of Your Base Salary. To be eligible for any senior management bonus, You would have to be an employee in good standing on the bonus payment date to earn and be eligible to receive a senior management bonus; no partial or prorated senior management bonuses will be provided.

**BENEFITS**

**Regular Employee Benefits:**  You will be eligible to participate in the Company's standard employee benefit plans, including medical, dental, and vision insurance (for You, your spouse, and your eligible dependents), and life and disability insurance, in accordance with the terms and conditions of the plans and applicable policies which may be in effect from time to time, and provided by the Company to its employees generally or to executives only.  The Company may modify its benefits programs and policies from time to time in its discretion.  Notwithstanding the foregoing, the Company shall agree to provide You with Employee Benefits which are equal to or exceed the following minimum benefit levels: basic life insurance in an amount equal to two times Base Salary with a cap of $500,000; AD&D coverage up to two times Your Base Salary with a cap of $500,000; short-term disability providing salary continuation of 100% of Your Base Salary for a period up to twenty-six (26) weeks; long term Disability providing salary continuation up to 60% of Your Base Salary after You have exhausted short-term disability; and an executive physical allowance not to exceed $2,500 per year to cover uninsured/non-covered medical expenses.

**401(k):**  You will be immediately eligible to participate in the Company's 401(k) retirement savings plan. Should You choose to participate, the Company will match all of Your contributions on a yearly basis, up to four percent (4%) of Your then annual Base Salary, and You will be fully vested with no waiting period except as otherwise required by the terms and conditions of that plan.

**PTO/Holidays:** You will also accrue paid time off ("PTO") time at the rate of 2.25 days per month (which equates to 27 days per year), up to a PTO accrual cap of forty (40) days, at which point You will

2



cease accruing additional PTO until such time as your total accrual is less than forty (40) days. You will also be eligible for the Company's standard holiday benefits, which shall not be less than eight (8) paid holidays per year. You will be given credit for 5 days of accrued PTO immediately upon the commencement of Your employment.

## EXPENSES

**Standard Expenses:** The Company will reimburse You for reasonable and appropriate business-related expenses upon Your prompt presentation of an itemized account of such expenditures with associated receipts.

**Travel:**  For business travel, You will be expected to book economy-class airline tickets for flights of six (6) hours or less, but may book business-class airline tickets for flights of greater than six (6) hours.

## SEVERANCE

If the Company terminates Your employment without "Cause," and provided such termination constitutes a "separation from service" (as defined under Treasury Regulation Section 1.409A-1(h)), or if You terminate Your employment for "Good Reason" as defined below, then the Company shall provide You with the following severance benefits as your sole severance benefits from the Company:

- Continuation of Your base salary then in effect for a period equal to six (6) months.  These payments will be made on the Company's regular payroll dates commencing with the first payroll date after Your termination of employment (except as set forth below), and will be subject to standard payroll deductions and withholdings. In addition, a lump sum payment, payable on the first payroll date after your termination of employment, in an amount equal to any accrued but unpaid PTO, prorated through the date of termination; and any unpaid expense reimbursement, and other accrued and vested benefits as of the date of termination, if any, under any of the Company's incentive plans or any of Company's other employee benefit plans (e.g., 401(k) plan, or bonus plans).

- Subject to Your election of continued medical insurance coverage in accordance with the applicable provisions of state and federal law (commonly referred to as "**COBRA**"), the Company shall pay to You, on the first day of each month, a fully taxable cash payment equal to the applicable COBRA premiums for that month (including premiums for You, your spouse, and your eligible dependents who have elected and remain enrolled in such COBRA coverage), subject to applicable tax withholdings (such amount, the "**Special Cash Payment**"), for a number of months equal to the lesser of (i) the duration of the period in which You, your spouse, and your eligible dependents are enrolled in such COBRA coverage (and not otherwise covered by another employer's group health plan) or (ii) the period of time of your salary continuation as set forth above.  You may, but are not obligated to, use such Special Cash Payment toward the cost of COBRA premiums. In the event You become covered under another employer's group health plan or otherwise cease to be eligible for COBRA during the period provided in this paragraph, You must immediately notify the Company of such event and the Company shall cease payment of the Special Cash Payments.

For purposes of this agreement, "**Cause**" shall mean (a) conviction of any felony or crime involving moral turpitude or dishonesty; (b) participation in a fraud or act of dishonesty against the Company; (c) willful and material breach of Your duties that has not been cured within thirty (30) days after written notice from the Board of such breach; (d) intentional and material damage to the Company's property; or



(e) material breach of any contractual obligation to the Company that has not been cured within thirty (30) days after written notice from the Board.

For purposes of this Agreement, resignation by You for "Good Reason" shall mean termination by You within sixty (60) days of and in connection with or based upon (a) a transfer or assignment from Your present position to a position which involves an overall substantial and material reduction in the nature or scope of Your duties and responsibilities without Your consent, (b) a reduction in Your annual Base Salary (including subsequent increases) or the failure to continue Your participation in any incentive compensation or employee benefit plan or program (except a compensation or benefit plan or program that is substantially comparable to an existing compensation or benefit plan or program) in which You are participating or are eligible to participate prior to such reduction (other than as a result of the expiration of such plan or program), in each case other than as part of a general program to reduce compensation or employee benefits on a proportional basis relative to other employees of Company, (c) a permanent change and relocation of You from the city in which You were serving immediately prior to the time of such change to a place which is more than 50 miles away from such location without your consent, or (d) a material breach by Company of any material provision of this Agreement which remains uncorrected for thirty (30) days following written notice of such breach by Employee to Company.

As a condition to receipt of these severance benefits, on Your termination date You will be required to provide the Company with an effective general release of any and all known and unknown claims against the Company and its officers, directors, employees, shareholders, parents, subsidiaries, successors, agents and affiliates in a form acceptable to the Company.  Notwithstanding the payment schedule set forth above, none of the severance benefits set forth herein shall be paid prior to the date on which You have provided such release. Upon receipt of such effective release, the Company will pay You the severance benefits You would otherwise have received under this offer on or prior to such date but for the delay in payment related to the effectiveness of the release, with the balance of the payments being paid as originally scheduled.

It is intended that all of the severance benefits and other payments payable under this offer satisfy, to the greatest extent possible, the exemptions from the application of Internal Revenue Code Section 409A provided under Treasury Regulations 1.409A-1(b)(4), 1.409A-1(b)(5) and 1.409A-1(b)(9), and this offer will be construed to the greatest extent possible as consistent with those provisions.  For purposes of Code Section 409A (including, without limitation, for purposes of Treasury Regulation Section 1.409A-2(b)(2)(iii)), Your right to receive any installment payments under this offer (whether severance payments, reimbursements or otherwise) shall be treated as a right to receive a series of separate payments and, accordingly, each installment payment hereunder shall at all times be considered a separate and distinct payment.

If the Company terminates Your employment for Cause, then You shall not receive any severance benefits from the Company, including (without limitation) those set forth above.

TEMPORARY HOUSING EXPENSE REIMBURSEMENTS

As discussed, You may relocate to New York City (or the surrounding area), and we expect Your relocation to be completed at a date mutually agreed under terms to be mutually agreed.  At the time of any such relocation, the Company will either pay or reimburse You for reasonable temporary and/or permanent relocation costs, as the case may be, including without limitation, temporary housing costs, consisting of rental/lease payments for a furnished apartment with parking, as well as any additional moving expenses incidental to any such relocation.  To assist in offsetting the amount of payroll taxes assessed against such reimbursements, if any, the Company will include an additional lump sum payment

4

to You in an amount equal to forty-two percent (42%) of the amount of any such taxable reimbursement paid to You (the "**Gross Up Payment**"), payable as and when the reimbursement is paid. For the avoidance of doubt, to the extent that any reimbursements payable under this letter are subject to the provisions of Section 409A of the Internal Revenue Code of 1986, as amended, any such reimbursements payable hereunder shall be paid no later than March 15 of the year following the year in which any such payments are made.

CONFIDENTIAL INFORMATION; COMPANY PROPERTY

A.    The term "**Confidential Information**" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company. By way of illustration but not limitation, " **Confidential Information**" includes tangible and intangible information relating to the Company's design and engineering of curtainwalls, as that term is used in the trade and industry, the Company's preparation, design, construction and installation of curtainwalls, as that term is used in the trade and industry, the Company's design and engineering of claddings, as that term is used in the trade and industry, the Company's preparation, design, construction and installation of claddings, as that term is used in the trade and industry, the Company's design and engineering of the skin of a buildings, the Company's preparation, design, construction and installation of the skin of a building, the composition of materials used in the curtainwalls, formulations, products, processes, know-how, designs, formulas, methods, developmental or experimental work, clinical data, technical date, improvements, discoveries, plans for research, new products, marketing and selling, bids, bidding strategy, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers, as well as the customers' business needs, the composition, design, manufacture, production, sale, purchase, bidding, promotion, application or use of any and all products, materials, systems, concepts or services in any way related to or useful in the business of the Company or its subsidiaries or affiliates and information regarding the skills and compensation of other employees of the Company.

B.    You agree that because Your services and responsibilities are of particular and unique significance service to the Company, You have had, and will continue to have, access to Confidential Information.

C.    You will not use Confidential Information, except for the benefit of the Company in the performance of Your employment duties and responsibilities with the Company. You will not disclose Confidential Information, except for the benefit of the Company and only to individuals authorized by the Company to receive such information.

D.    Notwithstanding the restrictions on the use of and disclosure of Confidential Information contained in this section and the restrictions on the use of and disclosure of Confidential Information in both statute and common law, You are not restricted in Your use of information that is generally known to, and is readily ascertainable by proper means by other persons, who can obtain economic value from its disclosure and use, and is the subject of efforts that are reasonable under the circumstances to maintain secrecy.

E.    You agree that any work or research, or the results thereof done or developed by You, alone or in connection with others and whether or not done during normal working hours, during the term of Your employment, including without limitation, any creations, designs, inventions, techniques, packaging ideas, slogans, processes, and/or software programs ("**Inventions**"), which arise out of and/or are related to the business or operations of the Company, or any of its subsidiaries or affiliates, shall, to the extent of Your interest therein, be the sole and exclusive property of the

