|   |   |
|---|---|
|   | Company. With respect to such Inventions, You agree to execute such documents as are necessary to effectively assign (when any such Inventions are first reduced to practice or first fixed in a tangible medium, as applicable) to Company all right, title, and interest in and to any and all Inventions (and all intellectual property rights with respect thereto). You further agree to disclose all such work or research to the Company. |
| F. | All papers and records of every kind, including, without limitation all records of customers and/or suppliers, and those relating to any software programs, creation, design, invention, process, formula, technique, bidding, packaging, ideas, slogans, improvement, copyright, trade name, trademark, service mark, or patent related to the business or operations of the Company or its subsidiaries or affiliates which shall at any time come into Your possession shall be the sole and exclusive property of the Company. For purposes of clarification, commonly available contact information found on websites such as LinkedIn or Facebook is excluded. |
| G. | All property of the Company shall be surrendered to the Company upon termination of Your employment or upon the Company's request at any other time either during his employment or after the termination of such employment. |
| H. | You will not copy, abstract, summarize or précis any documents, material or record that contains or refers to Confidential Information or the Company's property, unless it is for the benefit of the Company and is necessary in Your fulfillment of Your employment duties and responsibilities. You agree that You will not delete or alter any information contained upon Your Company computer or in Your Company notebooks or files before You return such to Company. |

**PROTECTION OF THIRD PARTY INFORMATION**

In Your work for the Company, You are expected not to make unauthorized use or disclosure of any confidential or proprietary information of any former employer or other third party. Rather, You are expected to use only that information which is generally known and used by persons with training and experience comparable to Your own, which is common knowledge in the industry or otherwise legally in the public domain, or which is otherwise provided or developed by the Company or by You in the course of Your employment by the Company. By signing this letter, You represent that You are able to perform Your job duties within these guidelines, and You agree that You will not use or bring, in connection with Your employment, any confidential documents, property, or materials belonging to any former employer or other third party. You hereby represent You are not a party to any agreement with any third party (e.g., a former employer) that would conflict with or limit Your ability to perform Your duties to the Company or otherwise present a conflict of interest with the Company, unless previously disclosed to the Board.

This letter will also acknowledge that You have provided the Company with a redacted copy of Your employment agreement with Your current employer which contains certain confidentiality and non-interference provisions. The Company expects You to comply with the post-termination restrictions set forth in Your employment agreement with Your current employer.

**OUTSIDE ACTIVITIES AND NON-INTERFERENCE AND NON-SOLICITATION AGREEMENT**

Throughout Your employment with the Company, You may engage in civic and not-for-profit activities so long as such activities do not interfere with the performance of Your duties hereunder or present a conflict of interest with the Company. Subject to the restrictions set forth herein and with the prior written consent of the Board, You may serve as a director of other corporations and may devote a reasonable amount of Your time to other types of business or public activities not expressly mentioned in

this paragraph. The Board may rescind its consent to Your service as a director of all other corporations or participation in other business or public activities, if the Board, in its sole discretion, determines that such activities compromise or threaten to compromise the Company's business interests or conflict with Your duties to the Company.

During Your employment by the Company, except on behalf of the Company, You will not directly or indirectly serve as an officer, director, stockholder, employee, partner, proprietor, investor, joint venturer, associate, representative or consultant of any other person, corporation, firm, partnership or other entity whatsoever known by You to compete with the Company (or is planning or preparing to compete with the Company), anywhere in the world, in any line of business engaged in (or planned to be engaged in) by the Company; provided, however, that You may purchase or otherwise acquire up to (but not more than) one percent (1%) of any class of securities of any enterprise (but without participating in the activities of such enterprise) if such securities are listed on any national or regional securities exchange.

In the event You resign from the Company without Good Reason or are terminated for Cause, You agree that for a period of six (6) months after such termination of Your employment:

1. You will not interfere with, obstruct or impede, either directly or indirectly, any project on which the Company is working. Nor will You, directly or indirectly, individually or on behalf of a person who is not party to this letter agreement, as a partner, director, officer, principal, agent, employee or in any other capacity, interfere with or interrupt any business relationship of the Company connected to any project on which You worked within the last twelve (12) months of Your employment with the Company. Nor will You directly or indirectly, individually or on behalf of a person who is not a party to this Agreement, as a partner, director, officer, principal, agent, employee or in any other capacity, interfere with or interrupt any business relationship or prospective business relationship of the Company connected to any project on which the Company sought or received information from You in connection with the submission of a bid or in connection with the development of a business relationship or prospective business relationship.

2. You further agree that for a period of nine (9) months after termination of Your employment You will not employ or attempt to employ (by soliciting or assisting anyone else in the solicitation of) any employee of the Company on behalf of any other entity, whether or not such entity competes with the Company.

3. In addition, for an additional three (3) month period You will not employ or attempt to employ (by soliciting or assisting anyone else in the solicitation of) any employee of any Company subsidiary or affiliate in China, on behalf of any other entity, whether or not such entity competes with the Company.

The restrictions contained in this section will not apply if the Employee is terminated for any reason other than for Cause or due to the Employee's voluntary resignation without Good Reason.

You and the Company hereby agree that, during the term of this letter agreement and for one year after the termination thereof for any reason, neither party will directly or indirectly disparage the other or disseminate, or cause or permit to be disseminated, negative statements or information regarding President, the Company or any other employee, officer, director or agent of Company. Notwithstanding the foregoing, neither party is hereby barred or restricted from exercising any right of speech or expression protected by applicable federal, state or local law due to the restriction imposed by this paragraph.

If any restriction set forth in this Section "Outside Activities and Noninterference and Nonsolicitation Agreement" is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

The restrictions contained in this Section "Outside Activities and Noninterference and Nonsolicitation Agreement" are necessary for the protection of the business and goodwill of the Company and are considered by Executive to be reasonable for such purpose and have been reviewed by Your counsel. You agree that any breach of this section will cause the Company substantial and irrevocable damage and, therefore, in the event of any such breach, in addition to such other remedies which may be available, the Company shall have the right to seek specific performance and injunctive relief.

### D&O Insurance

Company shall maintain a policy of directors and officers liability insurance in form reasonably satisfactory to You with coverage of at least $1,000,000 and, if there is a deductible, such deductible to be paid by the Company.

### AT-WILL EMPLOYMENT RELATIONSHIP

Subject to the terms and conditions contained herein, if You accept the Company's offer of employment, Your employment will be for an unspecified duration and will constitute an "at will" employment arrangement, which may be terminated at any time and for any reason whatsoever, with or without Cause, at the option of either You or the Company, upon sixty (60) days advance written notice. Your employment at-will status can only be modified in a written agreement signed by You and an officer of the Company.

### MISCELLANEOUS

This letter constitutes the complete, final, and exclusive embodiment of the entire agreement between You and the Company with regard to the subject matter hereof. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other agreements, promises, warranties or representations concerning its subject matter. This letter agreement will bind and inure to the benefit of the heirs, personal representatives, successors, and assigns of both You and the Company. If any provision of this letter agreement is determined to be invalid or unenforceable by a court of competent jurisdiction, in whole or in part, this determination shall not affect any other provision of this letter agreement and the provision in question shall be modified so as to be rendered enforceable in a manner consistent with the intent of the parties insofar as possible under applicable law. This letter agreement shall be construed and enforced in accordance with the laws of the State of Delaware without regard to conflicts of law principles. Any ambiguity in this letter agreement shall not be construed against either party as the drafter. Any waiver of a breach of this letter agreement, or rights hereunder, shall be in writing and shall not be deemed to be a waiver of any successive breach or rights hereunder. This letter agreement may be executed in counterparts which shall be deemed to be part of one original, and facsimile and PDF signatures shall be equivalent to original signatures. The provisions of this Agreement relating to severance pay, confidential information, and Non-Interference and Non-Solicitation shall survive the termination of this Agreement.



As required by law, this offer is subject to satisfactory proof of Your identity and right to work in the United States.

9

Please sign this letter and return it to me within seven (7) days to accept employment with the Company on the terms set forth herein. We are very excited about having You join us and look forward to working with You.

Sincerely,

TESLA WALLS, LLC.

_____
**Carleton Ruthling**
**Chairman of the Board of Directors**


**UNDERSTOOD AND AGREED:**

_____
**Michael Budd**

_____July 02, 2012_____
Date

## PROFESSIONAL SERVICES AGREEMENT

This Professional Services Agreement (this "**Agreement**"), dated July 2, 2012 (the "**Effective Date**"), is by and between Tesla Walls, LLC, a Delaware limited liability company ("**Customer**"), and Michael Budd, Inc., a Minnesota corporation ("**Consultant**").

1. **SERVICES**

Customer may from time to time issue statement(s) of work in the form attached to this Agreement as Exhibit A (each, a "**Statement of Work**"). Each Statement of Work shall be subject to all of the terms and conditions contained in this Agreement, shall become binding upon execution by each of the parties hereto and, upon execution, is hereby incorporated into this Agreement by reference. Consultant shall render to Customer those services set forth in the Statement(s) of Work ("**Services**") in a timely and professional manner consistent with industry standards, in accordance with this Agreement and any terms set forth in the applicable Statement(s) of Work. Consultant may not subcontract or otherwise delegate its obligations under this Agreement. Subject to compliance with Consultant's obligations hereunder, Consultant shall retain the sole control and discretion to determine the methods by which Consultant performs the Services and the places at which, the equipment and supplies with which, and the hours during which such Services are to be rendered.

2. **PAYMENTS**

**2.1 Compensation.** In consideration of the Services to be rendered pursuant to each Statement of Work, Consultant shall be paid as set forth in the applicable Statement of Work.

**2.2 Expenses.** Customer shall reimburse Consultant for reasonable travel and other business expenses that are incurred by Consultant in the performance of the Services and are approved in advance by Customer, in accordance with Customer's general policies, as may be amended from time to time. Consultant shall provide Customer with an itemized list of all such expenses and supporting receipts with each invoice therefor.

**2.3 Taxes.** Consultant acknowledges and agrees that it shall be Consultant's obligation to report as income all compensation received by Consultant pursuant to this Agreement and to pay any withholding taxes, self-employment taxes, and social security, unemployment or disability insurance or similar items, including interest and penalties thereon, in connection with any payments made to Consultant by Customer pursuant to this Agreement, including any Statement of Work. Consultant agrees to indemnify, hold harmless and, at Customer's discretion, defend Customer against any and all liability related to any taxes, penalties and interest Customer may be required to pay as a result of Consultant's failure to report such compensation or make such payments.

3. **CONFIDENTIAL INFORMATION; COMPANY PROPERTY**

**3.1** The term "**Confidential Information**" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company. By way of illustration but not limitation, "Confidential Information" includes tangible and intangible information relating to the Company's design and engineering of curtainwalls, as that term is used in the trade and industry, the Company's preparation, design, construction and installation of curtainwalls, as that term is used in the trade and industry, the Company's design and engineering of claddings, as that term is used in the trade and industry, the Company's preparation, design, construction and installation of claddings, as that term is used in the trade and industry, the Company's design and engineering of the skin of a buildings, the Company's preparation, design, construction and installation of the skin of a building, the composition of materials used in the curtainwalls, formulations, products, processes, know-how, designs, formulas, methods, developmental or experimental work, clinical data, technical date, improvements, discoveries, plans for research, new products, marketing and selling, bids, bidding strategy, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers, as well as the customers' business needs, the composition, design, manufacture, production, sale, purchase, bidding, promotion, application or use of any and all products, materials, systems, concepts or services in

1



any way related to or useful in the business of the Company or its subsidiaries or affiliates and information regarding the skills and compensation of other employees of the Company.

**3.2** Consultant agrees that because Consultant's services and responsibilities are of particular and unique significance to the Company, Consultant has had, and will continue to have, access to Confidential Information.

**3.3** Consultant will not use Confidential Information, except for the benefit of the Company in the performance of Consultant's duties and responsibilities with the Company. Consultant will not disclose Confidential Information, except for the benefit of the Company and only to individuals authorized by the Company to receive such information.

**3.4** Notwithstanding the restrictions on the use of and disclosure of Confidential Information contained in this section and the restrictions on the use of and disclosure of Confidential Information in both statute and common law, Consultant is not restricted in Consultant's use of information that is generally known to, and is readily ascertainable by proper means by other persons, who can obtain economic value from its disclosure and use, and is the subject of efforts that are reasonable under the circumstances to maintain secrecy.

**3.5** Consultant agrees that any work or research, or the results thereof done or developed by Consultant, alone or in connection with others and whether or not done during normal working hours, during the term of Consultant's service, including without limitation, any creations, designs, inventions, techniques, packaging ideas, slogans, processes, and/or software programs ("Inventions"), which arise out of and/or are related to the business or operations of the Company, or any of its subsidiaries or affiliates, shall, to the extent of Consultant's interest therein, be the sole and exclusive property of the Company. With respect to such Inventions, Consultant agrees to execute such documents as are necessary to effectively assign (when any such Inventions are first reduced to practice or first fixed in a tangible medium, as applicable) to Company all right, title, and interest in and to any and all Inventions (and all intellectual property rights with respect thereto). Consultant further agrees to disclose all such work or research to the Company.

**3.6** All papers and records of every kind, including, without limitation all records of customers and/or suppliers, and those relating to any software programs, creation, design, invention, process, formula, technique, bidding, packaging, ideas, slogans, improvement, copyright, trade name, trademark, service mark, or patent related to the business or operations of the Company or its subsidiaries or affiliates which shall at any time come into Consultant's possession shall be the sole and exclusive property of the Company. For purposes of clarification, commonly available contact information found on websites such as LinkedIn or Facebook is excluded.

**3.7** All property of the Company shall be surrendered to the Company upon termination of Consultant's service or upon the Company's request at any other time either during Consultant's service or after the termination of such service.

**3.8** Consultant will not copy, abstract, summarize or précis any documents, material or record that contains or refers to Confidential Information or the Company's property, unless it is for the benefit of the Company and is necessary in Consultant's fulfillment of Consultant's duties and responsibilities. Consultant agrees that Consultant will not delete or alter any information contained upon Company computers or in Consultant's Company notebooks or files before Consultant return such to Company.

**4.  BUSINESS RELATIONSHIPS**

Consultant acknowledges that Customer's relationships with its employees, customers and vendors are valuable business assets. Consultant agrees that, during the term of this Agreement and for six (6) months thereafter, provided this Agreement is terminated by either the Customer for cause or by the Consultant without Good Reason, as defined below, Consultant shall not (for itself or for any third party):

**4.1**   Interfere with, obstruct or impede, either directly or indirectly, any project on which the Company is working. Nor will Consultant, directly or indirectly, individually or on behalf of a person

2

who is not party to this letter agreement, as a partner, director, officer, principal, agent, employee or in any other capacity, interfere with or interrupt any business relationship of the Company connected to any project on which Consultant worked with the Company. Nor will Consultant directly or indirectly, individually or on behalf of a person who is not a party to this Agreement, as a partner, director, officer, principal, agent, employee or in any other capacity, interfere with or interrupt any business relationship or prospective business relationship of the Company connected to any project on which the Company sought or received information from Consultant in connection with the submission of a bid or in connection with the development of a business relationship or prospective business relationship.

**4.2** Consultant further agree that for a period of nine (9) months after termination of this Agreement that Consultant will not employ or attempt to employ (by soliciting or assisting anyone else in the solicitation of) any employee of the Company on behalf of any other entity, whether or not such entity competes with the Company.

**4.3** In addition, for an additional three (3) month period Consultant will not employ or attempt to employ (by soliciting or assisting anyone else in the solicitation of) any employee of any Company subsidiary or affiliate in China, on behalf of any other entity, whether or not such entity competes with the Company.

**4.4** For purposes of this Agreement, "**Cause**" shall mean (a) conviction of either the Consultant or Michael Budd of any felony or crime involving moral turpitude or dishonesty; (b) participation in a fraud or act of dishonesty against the Customer; (c) willful and material breach of Consultant's duties that has not been cured within thirty (30) days after written notice from the Customer of such breach; (d) intentional and material damage to the Customer's property; or (e) material breach of any contractual obligation to the Customer that has not been cured within thirty (30) days after written notice from the Customer.

For purposes of this Agreement, resignation by the Consultant for "Good Reason" shall mean termination by the Consultant within sixty (60) days of and in connection with or based upon (a) substantial and material reduction in the nature or scope of Consultant's duties and responsibilities without Consultant's consent, (b) a reduction in Consultant's compensation, or (d) a material breach by Customer of any material provision of this Agreement which remains uncorrected for thirty (30) days following written notice of such breach by Consultant to Customer.

**5.**   **TERM AND TERMINATION**

**5.1 Term.** This Agreement shall commence on the Effective Date and remain in full force and effect for a period of six (6) months.

**5.2 Termination.** Either party may terminate this Agreement for the other party's material breach if such breach remains uncured for thirty (30) days after receipt by the breaching party of written notice thereof. Customer may terminate this Agreement at any time, with or without cause, without further obligation to Consultant, upon sixty (60) days notice to Consultant.

**5.3 Effect of Termination.** Upon termination of this Agreement, Consultant shall immediately cease performing the Services. If this Agreement is terminated either by Customer without "Cause", or by the Consultant with "Good Reason," as defined above, Customer agrees to pay Consultant a termination fee in the amount of $31,875 per month for six months following the date of termination, plus any unpaid expense reimbursements incurred by the Consultant in connection with the services rendered hereunder. The provisions of paragraphs 3, 4, and 5 shall survive the termination of this Agreement.

**5.4 Delivery of Customer Property.** Upon termination of this Agreement, or at any time Customer so requests, Consultant shall deliver immediately to Customer all property belonging to Customer, whether given to Consultant by Customer or prepared by Consultant in the course of rendering the Services, including all equipment and software purchased by Consultant and reimbursed by Customer.

**6.**   **CONFIDENTIAL INFORMATION OF OTHERS**

Consultant shall not breach any agreements to keep in confidence, or to refrain from using, the confidential, proprietary or trade secret information of another client or employer. Consultant shall not

3