provide to Customer any information of another client or employer, in the Inventions or otherwise, nor shall Consultant use any such information in its activities for Customer, without the prior written consent of Customer and such other client or employer.

7. **WARRANTIES**

Consultant represents, warrants and covenants that (a) Consultant has the full power and authority to enter into this Agreement and to perform its obligations hereunder, without the need for any consents, approvals or immunities not yet obtained; (b) Consultant has the right to grant the rights and assignments granted herein, without the need for any assignments, releases, consents, approvals, immunities or other rights not yet obtained; (c) the Services, including, without limitation, any deliverables required hereunder, shall be free from material errors or other defects and shall substantially conform to any specifications for such Services and/or deliverables as set forth or referenced in any applicable Statement of Work; (d) the Inventions (and the exercise of the rights granted herein with respect thereto) do not and shall not infringe, misappropriate or violate any patent, copyright, trademark, trade secret, publicity, privacy or other rights of any third party, and are not and shall not be defamatory or obscene; (e) neither the Inventions nor any element thereof shall be subject to any restrictions or to any mortgages, liens, pledges, security interests, encumbrances or encroachments; and (f) each of Consultant's employees and contractors (if any) involved in the development of the Inventions have executed (or, prior to any such involvement shall execute) a written agreement with Consultant in which such persons (i) assign to Consultant all right, title and interest in and to the Inventions in order that Consultant may fully grant the rights to Customer as provided herein and (ii) agree to be bound by confidentiality and non-disclosure obligations equivalent to those set forth in this Agreement. Customer hereby disclaims all warranties of any kind, whether express, implied, statutory or otherwise, with respect to any Proprietary Information or other information or materials supplied by Customer to Consultant hereunder, including, without limitation, any warranties with respect to any specifications for the Inventions or other deliverables required hereunder.

9. **LIMITATION OF LIABILITY**

To the extent permitted by applicable law: (a) in no event shall either Party be liable under any legal theory for any special, indirect, consequential, exemplary or incidental damages, however caused, arising out of or relating to this Agreement, even if a Party has been advised of the possibility of such damages; and (b) in no event shall either parties' aggregate liability arising out of or relating to this Agreement (regardless of the form of action giving rise to such liability, whether in contract, tort or otherwise) exceed the fees payable by Customer hereunder.

10. **MISCELLANEOUS**

   10.1   **Assignment**. Neither party shall assign, sell, transfer, delegate or otherwise dispose of, whether voluntarily or involuntarily, by operation of law or otherwise, this Agreement or any or its rights or obligations under this Agreement

   10.2   **Notices**. Any notice, request, demand or other communication required or permitted hereunder shall be in writing, shall reference this Agreement and shall be deemed to be properly given: (a) when delivered personally; (b) when sent by facsimile, with written confirmation of receipt by the sending facsimile machine; (c) five (5) business days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) two (2) business days after deposit with an express courier, with written confirmation of receipt. All notices shall be sent to the address set forth on the signature page of this Agreement and to the notice of the person executing this Agreement (or to such other address or person as may be designated by a party by giving written notice to the other party pursuant to this Section).

   10.3   **Severability**. If any provision of this Agreement, or the application thereof to any person, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties, or, if incapable of such enforcement, shall be deemed to be deleted from this Agreement, and the remainder of this Agreement and such provisions as applied to other

4



persons, places and circumstances shall remain in full force and effect.

**10.4** **Waiver**. The waiver by either party of a breach of or a default under any provision of this Agreement shall not be effective unless in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any such right or remedy.

**10.5** **Governing Law**. This Agreement is to be construed in accordance with and governed by the laws of the State of Delaware without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the State of Delaware to the rights and duties of the parties.

**10.6** **Relationship of Parties**. This Agreement shall not be construed as creating an agency, partnership, joint venture or any other form of association, for tax purposes or otherwise, between the parties; and the parties shall at all times be and remain independent contractors. Except as expressly agreed by the parties in writing, neither party shall have any right or authority, express or implied, to assume or create any obligation of any kind, or to make any representation or warranty, on behalf of the other party or to bind the other party in any respect whatsoever. Neither party shall have any obligation or duty to the other party except as expressly and specifically set forth herein, and no such obligation or duty shall be implied by or inferred from this Agreement or the conduct of the parties hereunder. Consultant (and its employees, agents and contractors) shall not be entitled to any of the benefits that Customer may make available to its employees, such as group health, life, disability or worker's compensation insurance, profit-sharing or retirement benefits, and Customer shall not withhold or make payments or contributions therefor or obtain such protection for Consultant or its employees, contractors or agents. Consultant shall be solely responsible for all tax returns and payments required to be filed with or made to any federal, state or local tax authority with respect to Consultant's performance of services and receipt of fees under this Agreement.

**10.7** **Headings**. The headings used in this Agreement are for convenience only and shall not be considered in construing or interpreting this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

CUSTOMER

BY: _(signature)_
NAME: Carleton Ruthling
TITLE: Chairman of the Board
ADDRESS: _____

CONSULTANT

BY: _(signature)_
NAME: Michael V Budd
TITLE: President
ADDRESS: 3592 Woodland trail
Eagan, MN 55123

5

## EXHIBIT A

### STATEMENT OF WORK

This Statement of Work is entered into as of this 02 day of July, 2012, by and between [Michael Budd] ("**Consultant**"), and Tesla Walls, LLC ("**Customer**"), pursuant to that certain Professional Services Agreement dated as of June __, 2012 by and between Consultant and Customer (the "**Agreement**"). Any term not otherwise defined herein shall have the meaning set forth in the Agreement.

1. **Description of Services to be Performed by Consultant.**

    Consultant shall provide senior level strategic advice and direction to Customer on projects including the following:

    - The Village at Santa Monica
    - Hunters Point in New York
    - 111 Wacker in Chicago

    Consultant shall not provide any professional engineering or design services to Customer. Any engineering and design documents used by Customer shall be reviewed and confirmed by licensed engineers and/or architects as necessary.

2. **Compensation.** Consultant agrees that full and complete compensation for the Services shall be as follows:

    (a) Customer shall pay Consultant a total of $100,000 upon the Effective Date (the "Engagement Fee").

    (b) Customer shall pay Consultant $31,875 per month as payment for the Services.

    (c) Customer shall pay Consultant $3,188 per month as a supplemental fee in respect of providing the Services.

3. **Billing.**

**CUSTOMER**

BY: _[signature]_
NAME: Carleton Ruthling
TITLE: Chairman of the Board

**CONSULTANT**

BY: _[signature]_
NAME: Michael Budd
TITLE: President

6

# Exhibit B

Michael Budd
3592 Woodland Trail
Eagan, MN 55123
March 8, 2014

By Certified US Mail & Email Notification

Carleton Ruthling
Chairman of the Board of Directors
Tesla Walls, LLC
848 N. Rainbow Blvd., Ste 4249
Las Vegas, NV 89107

Re: Resignation for Good Reason

Dear Carleton:

This letter shall serve as written notification of the undersigned's resignation as President of Tesla Walls, LLC ("Tesla") for Good Reason as defined in the employment contract between Tesla and Michael Budd dated July 02, 2012, ("Agreement") and as set forth below.

Tesla, pursuant to the Agreement, is required to provide basic life insurance in an amount equal to two times Base Salary with a cap of $500,000; AD&D coverage up to two times Base Salary with a cap of $500,000; short-term disability providing salary continuation of 100% of Base Salary for a period up to twenty-six (26) weeks; or long term Disability providing salary continuation up to 60% of Base Salary after exhaustion of short-term Disability ("Benefits"). Tesla has breached its obligations under the Agreement by failing to provide the Benefits as stated above and more further detailed in the Agreement and therefore the undersigned's resignation is tendered with Good Reason as defined in the Agreement.

In addition, Tesla is required to establish corporate goals for the Annual Performance Bonus (as defined in the Agreement) and has failed to do so. Furthermore, Tesla, specifically Tesla's Board, is required to conduct an annual performance review on or about the end of the calendar year, and award a Bonus pursuant to such review amounting to 40% of base salary for 2013 ($153,000) and has failed to do so. A Bonus of $153,000 is currently past due, please remit this amount within ten (10) days of the date herein.

Lastly, additional compensation in the form of Severance as defined in the Agreement is required to be paid during the wind down and resignation. In order to provide for a smooth transition and to arrange for Tesla's obligations as outlined herein, I will be contacting you on Monday, March 10, 2014.

Sincerely,

*[signature]*

Michael Budd
President

# Exhibit C

**Vazquez, William**

---

Subject:
Mike Budd Resignation Letter/Sales Information Handover
From:
Carleton Ruthling <ruthling@teslawalls.com>
Date:
4/3/14 7:16 PM
To:
Michael Budd pers <budd.mv@gmail.com>, Michael Budd <mbudd@teslawalls.com>

Mike:

I want to get back to your resignation letter and touch base regarding what needs to be accomplished during this transitional period.

Related is ultimately responsible to pay any amounts due you pursuant to your employment agreement.  I have been in discussion with them, and, of course, you will be paid all salary through the termination date, as well as accrued vacation. As to bonus for 2013 and a severance payment, those issues are under discussion with Related.  Both Related and Tesla are evaluating the employment agreement, your termination notice, the circumstances of your resignation, and overall performance of the company. Your performance through the end of your employment, as you can appreciate, will  directly bear on how Related will view all these issues.  I expect to have these discussions with Related concluded on or before your termination date.

In the meantime, as you know, as an employee of Tesla you owe a duty of loyalty to Tesla through the termination date. The sales contacts and correspondences you developed on behalf of Tesla during your employment belong to Tesla. In light of your resignation, we need to find an efficient way to transition this knowledge and documentation to Tesla.

You have pursued business contacts and potential projects on behalf of the company as our person in charge of the United States sales effort.  You have a duty to preserve all such data and to turn this over to Tesla.  Accordingly, we need to have you outline what information exists, in what form it exists, and how we can best preserve and transfer this information to the company. I need your assistance to get this accomplished.

Preliminarily, please provide the following:

1       A complete list of all sales contact information and data for your entire time with Tesla;

2       All customer lists relating to your marketing efforts;

3       A complete copy of emails and other correspondence that you generated for marketing purposes during your employment with the company, whether such emails were on the company email account, or routed through a separate email server;

4       Copies of all electronic documentation generated relating to Tesla business on any device whatsoever.  Please provide a list of all such devices not later than April 10, 2014 and the copies by April 17th;

5       A copy of all bids, proposals, and inquiries submitted to anyone and received from anyone (particularly Crown Corr) that involve potential Tesla opportunities; Please provide this by April 8th

6       Please provide a report summarizing the sales efforts you have made, with relevant contact information. This should specifically include, but not be limited to, all contacts made, information provided, and other information relating to the 200 N. Michigan project, the 545 McClurg project, the 1000 South Clark project, the 5th & Columbia project, the 151 No. Franklin project, the 200 North Michigan project, the Northwestern Mutual project, the Three Alliance Center project, and all other prospective projects you have pursued, or considered pursuing on behalf of Tesla. Please provide this report not later than April 9th, 2014.

7       Introduction to the potential California salesperson you mentioned; any leads for potential salespersons in other parts of the country. A brief description of the terms of engagement/compensation. Please provide this by April 8th.


We will require you to turn over all company computers and devices upon your departure.  We should discuss whether it makes sense to retain someone to separately copy any of the above information onto a separate hard drive. We should also do a formal exit interview. Let's schedule a convenient time for this.


Receipt of the foregoing information summarizing sales efforts you made on behalf of Tesla during your employ is obviously critical for the prospects of Tesla's success going forward.  Therefore, your cooperation in this regard is expected and will bear upon any discretionary aspects of your severance compensation.


In the meantime, I understand you are meeting with Tim and Roland and our architectural expert in San Francisco to outline the Santa Monica claim.


Your cooperation on all this is much appreciated,


Carleton.

--
Carleton Ruthling, Ph.D.
Chairman & CEO
Tesla Wall Systems
848 N. Rainbow Blvd., Ste 4249
Las Vegas, NV 89107
USA: (+1) 321-396 5247 (if not in the USA, number will forward to me)