UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TESLA WALL SYSTEMS, LLC,

*Plaintiff*,

v.                                          CASE NO. 14-CV-08564 (LLS)

MICHAEL BUDD,

*Defendant*.

**DEFENDANT MICHAEL BUDD'S PROPOSED JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

**Page**

I.    PROPOSED OPENING REMARKS BY THE COURT – GENERAL...........................2

Proposed Jury Instruction No. 1:  Introduction.................................................2

Proposed Jury Instruction No. 2:  Order Of Trial .............................................4

Proposed Jury Instruction No. 3:  Province Of Judge And Jury.......................6

Proposed Jury Instruction No. 4:  Jury Conduct...............................................7

Proposed Jury Instruction No. 5:  Note Taking ...............................................10

Proposed Jury Instruction No. 6:  Publicity During Trial.................................11

Proposed Jury Instruction No. 7:  Evidence In This Case ...............................12

Proposed Jury Instruction No. 8:  Burden Of Proof.........................................14

Proposed Jury Instruction No. 9:  Affirmative Defenses..................................16

Proposed Jury Instruction No. 10:  Direct And Circumstantial Evidence ......17

Proposed Jury Instruction No. 11:  Credibility Of Witnesses..........................19

Proposed Jury Instruction No. 12:  Expert Witnesses......................................22

Proposed Jury Instruction No. 13:  What Is Not Evidence ..............................24

Proposed Jury Instruction No. 14:  Limiting Instructions Generally...............25

Proposed Jury Instruction No. 15:  Stipulations Of Fact ................................26

II.   PROPOSED FINAL INSTRUCTIONS – GENERAL....................................27

Proposed Jury Instruction No. 16:  Duty Of The Court....................................27

Proposed Jury Instruction No. 17:  Role Of The Jury.......................................28

Proposed Jury Instruction No. 18:  Duty Of Impartiality ................................29

Proposed Jury Instruction No. 19:  Use Of Notes............................................30

Proposed Jury Instruction No. 20:  Juror's Electronic Communications ........31

Proposed Jury Instruction No. 21:  Evidence In The Case ..............................32

Proposed Jury Instruction No. 22:  Admissions...............................................34

Proposed Jury Instruction No. 23:  Burden Of Proof.......................................35

Proposed Jury Instruction No. 24:  Direct And Circumstantial Evidence ......37

Proposed Jury Instruction No. 25:  Inferences.................................................39

Proposed Jury Instruction No. 26:  Expert Witnesses......................................41

Proposed Jury Instruction No. 27:  Expert Opinion Must Be To A Reasonable
      Probability.........................................................................................43

**TABLE OF CONTENTS**
(continued)

Page

Proposed Jury Instruction No. 28:  Charts And Summaries ............................................. 44

Proposed Jury Instruction No. 29:  Credibility Of Witnesses.......................................... 45

Proposed Jury Instruction No. 30:  Use Of Depositions As Evidence............................ 47

Proposed Jury Instruction No. 31:  Prior Inconsistent Statements.................................. 48

Proposed Jury Instruction No. 32:  Corporate Responsibility ......................................... 49

Proposed Jury Instruction No. 33:  Limiting Instructions Generally.............................. 51

III.    PROPOSED FINAL INSTRUCTIONS – CLAIMS & DAMAGES ............................. 52

Proposed Jury Instruction No. 34:  Nature Of The Claim ............................................... 52

Proposed Jury Instruction No. 35:  Common Law Breach Of Contract – Essential
        Elements ............................................................................................ 53

Proposed Jury Instruction No. 36:  Common Law Breach Of Contract – Breach........... 54

Proposed Jury Instruction No. 37:  Breach Of Contract Affirmative Defense –
        Substantial Performance .................................................................... 56

Proposed Jury Instruction No. 38:  Breach Of Contract Affirmative Defense –
        Estoppel.............................................................................................. 57

Proposed Jury Instruction No. 39:  Common Law Breach Of Contract – Damages
        Resulting From Breach Of Contract .................................................. 58

Proposed Jury Instruction No. 40:  Common Law Breach Of Contract –
        Foreseeability..................................................................................... 59

Proposed Jury Instruction No. 41:  Common Law Breach Of Contract – Duty To
        Mitigate Damages .............................................................................. 60

Proposed Jury Instruction No. 42:  Common Law Breach Of Contract –
        Superseding Cause ............................................................................. 61

Proposed Jury Instruction No. 43:  Misappropriation Of Trade Secrets Under The
        Delaware Uniform Trade Secrets Act – Essential Elements .............. 63

Proposed Jury Instruction No. 44:  Misappropriation of Trade Secrets Under The
        Delaware Uniform Trade Secrets Act – Existence of a Trade Secret.................. 64

Proposed Jury Instruction No. 45:  Misappropriation of Trade Secrets Under The
        Delaware Uniform Trade Secrets Act – Misappropriation Element.................... 67

Proposed Jury Instruction No. 46:  Misappropriation of Trade Secrets Under The
        Delaware Uniform Trade Secrets Act – Damages Arising From Violation ........ 68

Proposed Jury Instruction No. 47:  New York Common Law Misappropriation Of
        Trade Secrets – Essential Elements ................................................... 69

**TABLE OF CONTENTS**
(continued)

**Page**

Proposed Jury Instruction No. 48:  Common Law Conversion Of Confidential
Information – Essential Elements ....................................................... 71

Proposed Jury Instruction No. 49:  Common Law Conversion Of Confidential
Information – Tesla's Property Interest .............................................. 72

Proposed Jury Instruction No. 50:  Common Law Conversion Of Confidential
Information – Wrongful Dominion .................................................... 73

Proposed Jury Instruction No. 51:  Common Law Conversion Of Confidential
Information – Sustaining Damages.................................................... 74

Proposed Jury Instruction No. 52:  Common Law Breach Of Fiduciary Duty –
Essential Elements ......................................................................... 75

Proposed Jury Instruction No. 53:  Common Law Breach Of Fiduciary Duty –
Existence Of Fiduciary Duty ........................................................... 76

Proposed Jury Instruction No. 54:  Common Law Breach Of Fiduciary Duty –
Violation ...................................................................................... 77

Proposed Jury Instruction No. 55:  Common Law Breach Of Fiduciary Duty
Affirmative Defense – Estoppel........................................................ 79

Proposed Jury Instruction No. 56:  Common Law Breach Of Fiduciary Duty –
Causation...................................................................................... 80

Proposed Jury Instruction No. 57:  Damages Generally.................................................. 82

Proposed Jury Instruction No. 58:  Effect Of Instruction As To Damages .................... 85

Proposed Jury Instruction No. 59:  Exemplary Damages Under The Delaware
Uniform Trade Secrets Act .............................................................. 86

Proposed Jury Instruction No. 60:  Punitive Damages Under Claims Other Than
Delaware Uniform Trade Secrets Act And Breach of Contract ......................... 87

Proposed Jury Instruction No. 61:  Effect Of Instruction As To Exemplary And
Punitive Damages .......................................................................... 90

IV.    PROPOSED CONCLUDING INSTRUCTIONS.......................................................... 91

Proposed Jury Instruction No. 62:  Right To See Exhibits And Hear Testimony;
Communications With Court............................................................. 91

Proposed Jury Instruction No. 63:  Communications Between Court And Jury
During Jury's Deliberations.............................................................. 92

Proposed Jury Instruction No. 64:  Duty To Deliberate ................................................. 93

Proposed Jury Instruction No. 65:  Election Of Foreperson ............................................ 94

Proposed Jury Instruction No. 66:  Verdict Forms – Jury's Responsibility ................... 95

**TABLE OF CONTENTS**
(continued)

**Page**

Proposed Jury Instruction No. 67:  Return Of Verdict ..................................................... 96

Pursuant to the August 10, 2016 scheduling order (ECF No. 43), and the September 13, 2016 letter endorsed by the Court (ECF No. 45), defendant Michael Budd ("Mr. Budd") respectfully submits the following proposed jury instructions.  Mr. Budd reserves the right to modify, amend, or supplement the following proposed jury instructions to address any arguments raised by plaintiff Tesla Wall Systems, LLC ("Tesla") before or during trial, any rulings that the Court may issue before or during trial, or the evidence actually introduced at trial.

## I.    PROPOSED OPENING REMARKS BY THE COURT – GENERAL

***Proposed Jury Instruction No. 1:  Introduction***

  Ladies and gentleman of the jury, we are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you understand what will be presented to you and how you should conduct yourself during the trial.

  During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you.  The party who sues is called the plaintiff.  In this action, the plaintiff is Tesla Wall Systems, LLC, or "Tesla."  The party being sued is called the defendant.  In this action, the defendant is Michael Budd, or "Mr. Budd."

  Over the course of this trial, you will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

  When I say "admitted into evidence" or "received into evidence," I have ruled that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

  Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

  From time to time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.  When I "sustain" an

objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.

During the course of the trial I may ask a question of a witness.  If I do, that does not indicate that I have any opinion about the facts in the case.

The lawyers are not allowed to speak with you during this case.  When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but I ask that you keep in mind the importance of the matter you are here to determine and ask that you will be patient even though the case may seem to go slowly.


**SOURCE:**  3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions ("Fed. Jury Prac. & Instr."), § 101:01, 30, 31, 49 (6th ed.); 4 Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, Modern Federal Jury Instructions-Civil ("Modern Fed. Jury Instr.-Civil"); Model Civ. Jury Instr. 3rd Cir. 1.1-1.12 (2011) (adapted).

***Proposed Jury Instruction No. 2:  Order Of Trial***

Turning to the specifics of this case, Tesla has alleged that Mr. Budd violated his employment agreement, misappropriated trade secrets or confidential information, and breached his fiduciary duty.  Mr. Budd denies that he has violated his employment agreement, misappropriated trade secrets or confidential information, or breached his fiduciary duty.

The first step in the trial will be the opening statements.  In its opening statement, Tesla's counsel will tell you about the evidence that it intends to put before you, so that you will have a preview of what its case is going to be.  It is important that you remember that the opening statement is not evidence.  Its purpose is only to help you understand what the evidence will be and what Tesla will try to prove.

After Tesla's opening statement, counsel for Mr. Budd will make an opening statement. Similarly, it is important for you to keep in mind that this opening statement is not evidence.  At this point in the trial, neither side has offered any evidence.

After both sides have made their opening statements, Tesla will call its first witness or otherwise offer evidence that it says will support its claim against Mr. Budd.  Mr. Budd's counsel will have an opportunity to cross examine Tesla's witnesses.

After Tesla has had a chance to show you its evidence, Mr. Budd may present evidence on his behalf.  Tesla's counsel will then have an opportunity to cross examine Mr. Budd's witnesses.

After you have heard all the evidence on both sides, counsel for Tesla and counsel for Mr. Budd will each be given time for their closing arguments.  I just told you that the opening statements are not evidence.  The same applies to the closing arguments, which are not evidence

4

either.  In their closing arguments, the lawyers for Tesla and Mr. Budd will attempt to summarize their cases and help you understand the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict.  After hearing my instructions, you will leave the courtroom together to make your decision.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:02-03 (6th ed.) (adapted).

***Proposed Jury Instruction No. 3:  Province Of Judge And Jury***

Now that I have described the trial itself, let me explain the jobs that you and I are to perform during the trial.

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented.  You are the sole and exclusive judge of the facts.  By your verdict, you will decide disputed issues of fact.

I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.  In other words, as Judge, I will decide which rules of law apply to this case.  I will make those decisions in response to questions raised by the parties as we go along and also in the final instructions given to you after the evidence and arguments are completed.  I must stress that you are required to accept the rules of law that I give you, whether or not you agree with them.

As the jury, you will decide whether Tesla has proved, by a preponderance of the evidence, that Mr. Budd breached his employment agreement, misappropriated trade secrets or confidential information, or breached his fiduciary duty.  You must base that decision only on the evidence in the case and my instructions about the law.

I am permitted to comment on the evidence in the case during the trial or while instructing the jury.  Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.); *see also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991).

***Proposed Jury Instruction No. 4:  Jury Conduct***

Ladies and gentlemen, to ensure fairness to the parties in this action, you must obey the following rules:

1.  Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.  Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell people you are a juror, but do not tell them anything else about the case.

3.  Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until after you have reached your verdict.  If someone should try to talk to you about the case before then, please report it to me immediately.

4.  During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.  Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6.  Do not do any research, such as checking dictionaries or searching the Internet, or make any investigation about the case, the parties, the witnesses, or the attorneys.

7.  Do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

7

8.  If you need to tell me something, simply give a signed note to the *[marshal] [clerk]* to give to me.

To reiterate, during the course of the trial you will receive all the evidence you properly may consider to decide the case.  You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or corporations involved in the case.  In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I know that many of you use cell phones, iPhones, Blackberries, the Internet and other tools of technology.  You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, including Facebook, Instagram, Google+, My Space, LinkedIn, or YouTube. You may not use any similar social media technology, even if I have not specifically mentioned it here.

I expect you will inform me if you become aware of another juror's violation of these instructions.

8

The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:11-13 (6th ed.) (adapted).

*Proposed Jury Instruction No. 5:  Note Taking*

During this trial, I will permit you to take notes.  You are not required to take notes.  If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

If you decide to take notes, a word of caution is in order.  You must not allow your note-taking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down.  Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Your memory should be your greatest asset when it comes time to deciding this case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:15 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 71.02, 71-16; *see also United States v. Bertolotti*, 529 F.2d 149, 159 (2d Cir. 1975).

***Proposed Jury Instruction No. 6:  Publicity During Trial***

      If there is publicity about this trial, you must ignore it.  Do not read anything or listen to any television or radio programs about the case.  You must decide this case only from the evidence presented in the trial.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:21 (6th ed.).

*Proposed Jury Instruction No. 7:  Evidence In This Case*

The evidence in the case consists of the following:

1.      The sworn testimony of the witnesses, no matter who called the witness;

2.      All exhibits received in evidence, regardless of who may have produced the exhibits; and

3.      All facts that may have been judicially noticed, admitted by the parties or stipulated to between the parties, and that you must take as true for purposes of this case.

Where I have declared that I have taken judicial notice of some fact or event, you must accept that fact as true.

A stipulation is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

An admission is a concession by a particular party that a certain fact is true.  When a party concedes or admits the existence of a fact, you must, unless otherwise instructed, accept the admission as evidence, and regard that fact as proved.

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.  Furthermore, if a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact.

Any evidence as to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

The law permits me to comment on the evidence in the case. These comments are only an expression of my opinion as to the facts. You may disregard my comments entirely, since you, as jurors are the sole judges of the facts and are not bound by my comments or opinions.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 101:40 (6th ed.) (adapted).

***Proposed Jury Instruction No. 8:  Burden Of Proof***

This is a civil case.  As I mentioned earlier, the plaintiff here, Tesla, is suing the defendant, Mr. Budd, for his alleged breach of his employment agreement, alleged misappropriation of trade secrets and confidential information, and alleged breach of fiduciary duty.  Tesla has the burden to prove every essential element of each one of its claims by a preponderance of the evidence.

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true.  One way to think about this is as follows:  if you were to put all of the evidence in favor of Tesla, and all of the evidence in favor of Mr. Budd on opposite sides of a scale, Tesla would have to make the scale tip to its side.  If, in your view, the scale tips in Tesla's favor, it has met its burden, and your verdict must be for Tesla.  If Tesla fails to meet this burden, your verdict must be for Mr. Budd.

If Tesla fails to establish any essential element of any of its claims by a preponderance of the evidence, you should find for Mr. Budd as to that claim.  I will explain these elements to you

14

in detail after you have had the opportunity to hear the evidence and arguments put on by both sides.

Please note that the preponderance of the evidence standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Please keep in mind that, when assessing whether a party has met its burden of proof on any claim or defense, the question is not which party called the greater number of witnesses, or how much time one party or another spent on that claim during the trial. Your focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2; *see also* Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011); *Heller v. Kiernan*, No. CIV.A. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002).

***Proposed Jury Instruction No. 9:  Affirmative Defenses***

As the defendant in this action, Mr. Budd may assert an affirmative defense as to certain elements of one or more of the claims asserted by Tesla.  I will go into the specifics of such affirmative defenses after you have had a chance to hear the evidence, but it is important that you understand generally what an affirmative defense is.

An affirmative defense is a fact or set of facts which, if proven by Mr. Budd, defeats or mitigates the legal consequences of his conduct with respect to Tesla's claims.  In other words, even if Tesla proves that Mr. Budd committed the alleged acts, if Mr. Budd proves other facts which, under the law, either justify or excuse his actions, or otherwise overcome Tesla's claim, then claim, then Tesla may not recover on its claims.

Mr. Budd has the burden of proof of establishing any affirmative defense it may assert by a preponderance of the evidence.

**SOURCE:**  3B Fed. Jury Prac. & Instr. § 162:310 (6th ed.).

***Proposed Jury Instruction No. 10:  Direct And Circumstantial Evidence***

Generally speaking, there are two types of evidence presented during a trial -- direct evidence and circumstantial evidence.  "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  In other words, direct evidence is when a witness testifies about something he knows by virtue of his own senses -- something he has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact.  In other words, it is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.  Circumstantial evidence tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence, and you should consider both kinds of evidence. You are to decide how much weight to give any evidence. A greater degree of certainty is not required of circumstantial evidence. In other words, circumstantial evidence is of no less value than direct evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:42; 104:05 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 74.01, 74-2.

*Proposed Jury Instruction No. 11:  Credibility Of Witnesses*

As the trial proceeds, the parties in this action will present you with the evidence they will use to make their cases.  They will ask you to draw very different conclusions about various factual issues in the case.

In deciding the facts, you will have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

In this process, ladies and gentleman, you are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  It is your job to decide how believable each witness was in his or her testimony.

How do you determine where the truth lies?  You will watch each witness testify.  Everything a witness says or does on the witness stand counts in your determination.  How did the witness impress you?  Did he/she appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his/her demeanor -- that is, his/her carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he/she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.  You should consider the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, the reasonableness and probability of his/her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

20

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

To repeat, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:43; 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-1 -- 76-4; *see also Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952).

***Proposed Jury Instruction No. 12:  Expert Witnesses***

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions; ordinarily, witnesses are permitted to testify only as to facts.  There is an exception to this rule, however, for "expert witnesses."  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses are permitted to state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

During this trial, I may permit certain expert witnesses to express their opinions about certain matters that will be at issue in this case.  Such expert witnesses are permitted to testify to an opinion only on those matters about which they have special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and/or experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

In weighing the opinion testimony offered by expert witnesses in this trial, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  As I mentioned, you may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however,

accept expert testimony merely because I allowed the witness to testify concerning his or her

opinion, or because the witness may be referred to as an expert.  Nor should you substitute it for

your own reason, judgment and common sense.  The determination of the facts in this case rests

solely with you.


**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01,
76-9, 76-10; *see also United States v. Simon*, 425 F.2d 796, 806 (2d Cir. 1969).

***Proposed Jury Instruction No. 13:  What Is Not Evidence***

      In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers; questions and objections of the lawyers; testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:44 (6th ed.).

***Proposed Jury Instruction No. 14:  Limiting Instructions Generally***

During the course of the trial, I may determine to limit the admission of certain evidence so that it may be used only for certain purposes.  Such evidence will be admitted only for that limited purpose, and you must consider such evidence only for the limited purpose I articulate, and for no other.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 102:40 (6th ed.).

***Proposed Jury Instruction No. 15: Stipulations Of Fact***

As I mentioned, when the lawyers on both sides stipulate or agree to the existence of a fact, you must accept the stipulation as evidence, and regard that fact as proved.  Here, Tesla and Mr. Budd have stipulated to the following facts, all of which you must take as true:

- [*Stipulations of Fact*]

You must accept these facts as true.


**SOURCE:**  4-74 Modern Federal Jury Instructions-Civil P 74.02; 3 Fed. Jury Prac. & Instr. § 102:11 (6th ed.); *Zuchowicz v. United States*, 140 F.3d 381, 392 (2d Cir. 1998).

## II.    PROPOSED FINAL INSTRUCTIONS – GENERAL

***Proposed Jury Instruction No. 16:  Duty Of The Court***

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it.  You must apply the law to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law as explained in these instructions.

The lawyers have referred to some of the governing rules of law in their arguments.  If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates I have any opinion about the facts, and you should not interpret these instructions to suggest that I have an opinion about the facts of this case.  You, not I, have the duty to determine the facts.

Before I begin instructing you as to the law, I would like to note that it has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never flagged, and you have followed the testimony with close attention.  I ask you to give me that same careful attention as I instruct you on the law.  Please pay close attention, and I will be as clear as possible.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-
Civil 71.01, 71-1, 71-2; *Franks v. United States Lines Co.*, 324 F.2d 126, 127 (2d Cir. 1963).

27

*Proposed Jury Instruction No. 17: Role Of The Jury*

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nothing I may have said during the trial or what I may say in these instructions is evidence pertaining to any fact. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the either of the parties has proven its case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were intended to clarify or expedite matters and were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-Civil 71.01, 71-1, 71-2.

***Proposed Jury Instruction No. 18: Duty Of Impartiality***

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties. It would be equally improper for you to allow any feelings you might have about the nature of the claim against Mr. Budd to influence you in any way. The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons stand equal before the law and are to be treated as equals, including corporations.

All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**SOURCE:** 4 Modern Fed. Jury Instr.-Civil 71.01, 71-4, 72.01, 72-1; 3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10, 103:11, 103:12 (6th ed.).

*Proposed Jury Instruction No. 19:  Use Of Notes*

You may use any notes you may have taken during the trial.  However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.  Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.

The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations.  If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 103:02 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 71.02; *see also United States v. Bertolotti*, 529 F.2d 149, 159 (2d Cir. 1975).

***Proposed Jury Instruction No. 20: Juror's Electronic Communications***

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as cell phones, iPhones, Blackberries, the Internet, e-mail, text messaging, Twitter, any blog or website, including Facebook, Instagram, Google+, My Space, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me immediately if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 103:04 (6th ed.).

*Proposed Jury Instruction No. 21:  Evidence In The Case*

The evidence in the case consists of the following:

1.      The sworn testimony of the witnesses, no matter who called a witness;

2.      All exhibits received in evidence, regardless of who may have produced the exhibits; and

3.      All facts that may have been judicially noticed, admitted by the parties or stipulated to between the parties, and that you must take as true for purposes of this case.

Where I have declared that I have taken judicial notice of some fact or event, you must accept that fact as true.

A stipulation is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

An admission is a concession by a particular party that a certain fact is true.  When a party concedes or admits the existence of a fact, you must, unless otherwise instructed, accept the admission as evidence, and regard that fact as proved.

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.  Furthermore, if a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact.

Any evidence as to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

The law permits me to comment on the evidence in the case. These comments are only an expression of my opinion as to the facts. You may disregard my comments entirely, since you, as jurors are the sole judges of the facts and are not bound by my comments or opinions.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 103:30, 103:33, 103:34, 104:70 (adapted), 101:47-48 (adapted) (6th ed.); *see also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991).

***Proposed Jury Instruction No. 22:  Admissions***

You have heard evidence in the form of admissions by the parties.

Tesla has admitted the following facts, all of which you must take as true:

- [*Admissions*]

Mr. Budd has admitted the following facts, all of which you must take as true:

- [*Admissions*]

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:70 (6th ed.) (requests for admission generally); 4-74 Modern Federal Jury Instructions-Civil P 74.08 (same).

*Proposed Jury Instruction No. 23:  Burden Of Proof*

As I told you before the start of the trial, this is a civil case.  The plaintiff here, Tesla, bears the burden of proving every element of each of its claims or defenses by a preponderance of the evidence.

When a party has the burden to prove a matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true.  One way to think about this is as follows:  if you were to put all of the evidence in favor of Tesla, and all of the evidence in favor of Mr. Budd on opposite sides of a scale, Tesla would have to make the scale tip to its side.  If, in your view, the scale tips in Tesla's favor, it has met its burden, and your verdict must be for Tesla.  If Tesla fails to meet this burden, your verdict must be for Mr. Budd.

If Tesla fails to establish any essential element of any of its claims by a preponderance of the evidence, you should find for Mr. Budd.  I will explain these elements to you in detail later in these instructions.

Please note that the preponderance of the evidence standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Please keep in mind that, when assessing whether a party has met its burden of proof on any claim, the question is not which party called the greater number of witnesses, or how much time one party or another spent on that claim during the trial. Your focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); 4 Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2 (2014); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011).

*Proposed Jury Instruction No. 24:  Direct And Circumstantial Evidence*

As I mentioned to you before the start of the trial, there are two types of evidence presented during a trial -- direct evidence and circumstantial evidence.  "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. In other words, direct evidence is when a witness testifies about something he knows by virtue of his own senses -- something he has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact.  In other words, it is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.  Circumstantial evidence tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

37

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence, and you should consider both kinds of evidence. You are to decide how much weight to give any evidence you have been presented at trial. A greater degree of certainty is not required of circumstantial evidence. In other words, circumstantial evidence is of no less value than direct evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:42; 104:05 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 74.01 (2014); *see also Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

*Proposed Jury Instruction No. 25:  Inferences*

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.  "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact that has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 75.01. 75-1; *see also Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956); *Wilkins v. American Export Isbrandtsen Lines, Inc.*, 446 F.2d 480, 484 (2d Cir. 1971).

*Proposed Jury Instruction No. 26:  Expert Witnesses*

As I mentioned at the outset of the trial, the rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions; ordinarily, witnesses are permitted to testify only as to facts.  There is an exception to this rule, however, for "expert witnesses."  An expert witness is a person who, by education and experience, has become expert in some art, science, profession, or calling.  Expert witnesses are permitted to state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.  During this trial, you have heard certain expert witnesses express their opinions about certain issues in this case.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

In weighing the opinion testimony offered by expert witnesses in this trial, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  As I mentioned, you may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept expert testimony merely because I allowed the witness to testify concerning his or her opinion, or because the witness may be referred to as an expert.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01; *see also United States v. Simon*, 425 F.2d 796, 806 (2d Cir. 1969).

***Proposed Jury Instruction No. 27:  Expert Opinion Must Be To A Reasonable Probability***

You have heard experts being asked to give opinions based on a reasonable economic or financial probability.  An expert may not speculate about mere possibilities.  Instead, the expert may offer an opinion only if it is based on a reasonable probability.  Therefore, in order for you to find a fact based on an expert's testimony, that testimony must be based on reasonable probabilities, not just possibilities.

**SOURCE**: F.R.E. 703, 705; *Delmarva Power & Light Co. v. Burrows,* 435 A.2d 716, 720-21 (Del. 1981).

*Proposed Jury Instruction No. 28:  Charts And Summaries*

Charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.

They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.  The charts and summaries are used only as a matter of convenience.  To the extent that you find they are not truthful or accurate summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 104:50 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 74.06, 74-12; *see also United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986).

*Proposed Jury Instruction No. 29: Credibility Of Witnesses*

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. It must also be obvious to you that both sides cannot be correct about the key issues in dispute and this is where you play your role as jurors. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his demeanor--that is, his carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he says it that moves us.

As I mentioned before the trial began, you should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. In other words, consider any relation each

45

witness may have with either side of the case, the manner in which each witness might be affected by the verdict.

You should consider the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case, the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, his/her intelligence, and the reasonableness and probability of his/her testimony.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. Always remember that you should use your common sense, your good judgment and your own life experience.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

Please keep in mind that the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-1.

***Proposed Jury Instruction No. 30:  Use Of Depositions As Evidence***

During the trial, certain testimony has been presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented in writing under oath or by video.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

You should draw no inferences from the fact that a witness' testimony is offered through a deposition as opposed to through live testimony in court.  You must give such deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 102:23; 105:02 (6th ed.) (citing instruction given in *Goldwater v. Ginzburg*, 261 F. Supp. 784, 785 (S.D.N.Y. 1966), *aff'd*, 414 F.2d 324 (2d Cir. 1969)).

***Proposed Jury Instruction No. 31: Prior Inconsistent Statements***

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony. Evidence of a prior inconsistent statement or conduct is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement is before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that in deciding how much of his trial testimony, if any, to believe.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves. It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed.); 4 Modern Fed Jury Instr.-Civil 76.01, 76-5; *see also Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 44 (2d Cir. 2000).

***Proposed Jury Instruction No. 32:  Corporate Responsibility***

A corporation may act only through natural persons who are its agents or employees. Generally, any agents or employees of a corporation may bind the corporation by acts and declarations made while acting within the scope of the authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

In order to find that the act of an employee or agent was binding on the corporation, you must find that the employee or agent had authority to act in the manner in which he or she is alleged to have acted.

This authority may be express, apparent or inherent.  Express authority is created by the direct verbal or written giving of that authority by the corporation to its agent.  For example, express authority to perform certain duties may be part of an employee's contract.

Apparent authority, on the other hand, is the authority which a principal, by reason of its acts and conduct, leads a third person reasonably to believe that its agent possesses.  Apparent authority can be created by appointing a person to a position, such as manager, treasurer or other, which position carries generally recognized duties.  In other words, apparent authority is based on a "holding out to the world" of the agent, in its particular position, by the corporation.  To third parties who deal with this agent, knowing of his/her position, the agent has apparent authority to do all those things ordinarily done by someone in that position, regardless of any unknown limitations which are imposed on the particular agent.  In such circumstances, the corporation is bound to third parties, who are unaware of any lack of authority to the same extent as if the power to act had been directly conferred.  Therefore, if you find that the corporation has, by reason of its words or conduct, led a third party to rely on the appearance of the agent's

49

authority to act on behalf of all the facts and circumstances of the particular case, then the corporation is responsible for such acts of its agent as if the corporation itself committed the acts.

There are also situations in which an agent has inherent authority to bind the corporation even when the corporation has not granted the employee either the express or apparent authority to act on its behalf. This inherent authority may exist, provided the acts in question are within the scope of his or her employment, even though the acts may be criminal or tortious. An act is within the scope of employment if it is sufficiently related to the kind the employee was employed to perform, if it was done substantially within the time and space limits of the job and was actuated, at least in part, by a purpose to serve the corporation.

Therefore, if you find that an employee or agent of a company acted within the scope of express, apparent, or inherent authority, you may find that the company was responsible for that employee's conduct.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 103:31, 108:01 (6th ed.); 4-72 Modern Fed. Jury Instr.-Civil 72.01 (adapted from charge of Judge Weinfeld in *Farmer v. Arabian American Oil Co.* (S.D.N.Y. 1961)).

***Proposed Jury Instruction No. 33:  Limiting Instructions Generally***

As I mentioned to you before trial, I have decided to limit the admission of certain evidence so that it may be used only for certain purposes.  Such evidence will be admitted only for that limited purpose, and you must consider such evidence only for the limited purpose I articulate, and for no other.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 102:40 (6th ed.).

51

### III.    PROPOSED FINAL INSTRUCTIONS -- CLAIMS & DAMAGES

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations made in this case.

### *Proposed Jury Instruction No. 34:  Nature Of The Claim*

Tesla asserts its claims under the common law and under the Delaware Uniform Trade Secrets Act, specifically, alleging that Mr. Budd breached his employment contract, misappropriated Tesla's trade secrets, wrongfully exerted dominion over Tesla's confidential information, and breached fiduciary duties.

Mr. Budd denies all of Tesla's claims.  Mr. Budd claims that he did not breach his employment agreement and did not cause any damage to Tesla or its business.  Mr. Budd claims that the information Tesla claims is a trade secret is not in fact a trade secret, and that he has the right to use any general knowledge or skill he acquired during his employment with Tesla.  Mr. Budd has asserted defenses, including, among others, estoppel -- that he relied on Mr. Ruthling's instruction that he should find a new job; substantial performance -- that he substantially accomplished the purpose of the Employment Agreement; and non-materiality of breach -- that he did not materially breach the Employment Agreement.

***Proposed Jury Instruction No. 35:  Common Law Breach Of Contract – Essential Elements***

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a material or significant contractual duty constitutes breach of contract.  If a party breaches the contract and that breach causes injury or loss to the other contracting party, then the injured party may claim damages.

Because Tesla was a party to the contract at issue, Tesla would be entitled to recover from Mr. Budd any damages that Tesla can prove that it actually suffered as a direct result of what Tesla claims was Mr. Budd's material or significant breach of the contract.  To establish that Mr. Budd is liable to Tesla for breach of contract, Tesla must prove that Mr. Budd did not perform one or more material or significant terms of Tesla's contract with Mr. Budd and that Tesla has sustained damages as a direct result of Mr. Budd's failure to perform.

In order to prove a breach of contract, Tesla must demonstrate:

(1) the existence of a contract, whether express or implied;

(2) Mr. Budd's breach of a material or significant obligation imposed by that contract;

(3) Tesla performed its obligations under the contract; and

(4) that Tesla was damaged by reason of that breach by Mr. Budd.

**SOURCE**: Contract Formation § 19.1, DEL. P.J.I. CIV. § 19.1 (2000); Breach of Contract Defined § 19.20, DEL. P.J.I. CIV. § 19.20 (2000); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009).

**Proposed Jury Instruction No. 36:  Common Law Breach Of Contract – Breach**

In order to prove that Mr. Budd breached his employment agreement, Tesla must show that Mr. Budd did not comply with a material or significant obligation in the agreement. Mr. Budd disputes that he breached his employment agreement in any material or significant respect.  Tesla alleges that Mr. Budd breached the provisions of his employment agreement governing "Outside Activities And Non-Interference And Non-Solicitation" and "Confidential Information; Company Property."

A covenant or promise not to compete in a contract is not enforceable by a company that will soon cease to exist because such covenants are enforceable only to the extent that they afford an employer necessary protection against unfair competition stemming from the use or disclosure of trade secrets.  Therefore, an employee does not breach the non-interference and non-solicitation provisions in his employment agreement after his employer decides to, or plans to, wind down or close a business.

If you find that a decision was made to wind down or close Tesla's operations before any alleged material breach by Mr. Budd, then Tesla has no claim to enforce the non-interference and non-solicitation provisions of the employment agreement, and you should find that Mr. Budd is not liable for breach of contract.

In addition, Mr. Budd contends that he terminated his employment for "good reason" under subsections (b) and (d) of the employment agreement, since Tesla failed to:

(1) establish corporate goals for an annual performance bonus, conduct an annual performance review, and award an annual bonus pursuant to such a review; and

(2) provide certain contractual benefits as required under the Employment Agreement, including basic life insurance, AD&D coverage, and short-term and long-term disability.

Mr. Budd further contends that he provided Tesla with written notice of Tesla's failure to comply with the terms of the employment agreement.

If you find that Mr. Budd provided written notice to Tesla of his termination of employment for good reason, and that Mr. Budd terminated his employment for good reason, then you should find Mr. Budd is not liable for breach of contract with respect to the non-interference and non-solicitation provisions of the employment agreement.

Mr. Budd further contends that he did not breach the confidentiality provision of the employment agreement. The employment agreement restricts the use and disclosure of Confidential Information, but expressly exempts from the contractual restrictions information that is "generally known [] and is readily ascertainable by proper means." If you find that all of the information which Tesla alleges is confidential information was easily identifiable by Mr. Budd as a result of his years of experience in the facade industry, or that Tesla affirmatively disclosed to third parties, without confidentiality agreements, its (i) business plan, (ii) business concept of vertically integrating a curtainwall company into a real estate company, (iii) business strategies, and (iv) balance sheet information, such as overhead costs, profits, and salary information, then you should find that Mr. Budd is not liable for breach of the confidentiality provision of the employment agreement.

**SOURCE:** *Penn LLC v. Prosper Business Development Corp.,* No. 2:10-CV-0993, 2013 WL 3208567, at *6 (S.D. Ohio June 24, 2013) (applying Delaware law); *Gen. Video Corp. v. Kertesz,* No. CIV.A. 1922-VCL, 2008 WL 5247120, at *22 (Del. Ch. Dec. 17, 2008) (applying New York law); *Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc.,* 251 A.2d 571, 573 (Del. Super. Ct. 1969); *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 883 (Del. Ch. 2009); *Commerce Nat. Ins. Servs., Inc. v. Buchler,* No. CIV. 02-037-SLR, 2003 WL 22953225, at *4 (D. Del. Dec. 10, 2003), *aff'd,* 120 F. App'x 414 (3d Cir. 2004).

***Proposed Jury Instruction No. 37:  Breach Of Contract Affirmative Defense – Substantial Performance***

A good-faith attempt to perform a contract, even if the attempted performance does not precisely meet the contractual requirement, is considered complete if the substantial purpose of the contract is accomplished.  This means that the contract has been completed in every significant respect.  For example, if a builder completes an office tower but fails to apply a second coat of paint to the basement walls, the builder will have substantially performed the contract. This situation is known in the law as substantial performance. In our example, the builder would be entitled to payment on the terms of the contract but would also be liable to the office tower's owner for the cost of painting the basement walls.

If you find that Mr. Budd substantially performed the material or significant duties of his contract with Tesla, and that Tesla suffered minimal damages due to the slight deviation by Mr. Budd in substantially performing the contract, you may only award Tesla those minimal damages in the amount necessary to finish the performance under the contract.

**SOURCE:** *Emmett S. Hickman Co. v. Emelio Capaldi Developer, Inc.*, 251 A.2d 571, 572-73 (Del. Super. Ct. 1969).

*Proposed Jury Instruction No. 38: Breach Of Contract Affirmative Defense – Estoppel*

When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position. This is known in the law as estoppel. Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question.

To prove the affirmative defense of estoppel, Mr. Budd must prove:

1)       that there was a contractual relationship between Tesla and Mr. Budd;

2)       that Mr. Budd changed his position to his detriment because of Tesla's conduct through Mr. Ruthling's telling Mr. Budd that it was acceptable for Mr. Budd while still employed at Tesla to seek alternate employment; and

3)       that Mr. Budd reasonably relied on the conduct of Tesla.

If you find that Mr. Ruthling told Mr. Budd that he could look for other employment, and that Mr. Budd relied on Mr. Ruthling's statement and believed that he should actively seek new employment because Tesla was going to shut down its operations or effectively stop doing business, then Mr. Budd has proved estoppel. In that event, you should find that Mr. Budd did not breach his employment agreement.

You must determine whether Mr. Budd has proved all of the above elements of this affirmative defense by clear and convincing evidence.

**SOURCE**: *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990); *Wilson v. American Ins. Co.*, 209 A.2d 902, 903-04 (Del. 1965); *Reeder v. Sanford Sch., Inc.*, 397 A.2d 139, 141-42 (Del. Super. Ct. 1979); *National Fire Ins. Co. v. Eastern Shore Laboratories, Inc.*, 301 A.2d 526, 529 (Del. Super. Ct. 1973).

***Proposed Jury Instruction No. 39:   Common Law Breach Of Contract – Damages Resulting From Breach Of Contract***

A party that is harmed by a breach of contract is entitled to damages in an amount calculated to compensate it for the harm caused by the breach.  Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about the injury, and it must have been necessary to the result.

The burden is on Tesla to prove causation by a preponderance of the evidence, and the Tesla must show not only injury, but also that the injury was caused by Mr. Budd.

If you find that the evidence presented showed that no business was diverted from Tesla because of Mr. Budd's action, and or that it was diverted by reason of the actions of another person or entity, then Tesla has not proved causation and you should not award Tesla damages.

If you find that Tesla is entitled to a verdict in accordance with these instructions, but do not find that Tesla has sustained actual damages, then you may return a verdict for Tesla in some nominal sum such as one dollar.  Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of Tesla.

**SOURCE:** Measure of Damages - Breach of Contract § 22.24, DEL. P.J.I. CIV. § 22.24 (2000); Proximate Cause § 21.1, DEL. P.J.I. CIV. § 21.1 (2000); *Chem. Ltd. v. Slim-Fast Nutritional Foods, Inc.,* 350 F. Supp. 2d 582, 596-97 (D. Del. 2004); *Total Care Physicians, P.A. v. O'Hara,* No. CIV.A. 99C-11-201JRS, 2003 WL 21733023, at *2 (Del. Sup. Ct. July 10, 2003); *Edix Media Group, Inc. v. Mahani,* No. CIV.A. 2186-N, 2006 WL 3742595, at *13 (Del. Ch. 2006); *Millennium Validation Servs., Inc. v. Thompson,* No. CIV.A. 02-1430 (GMS), 2006 WL 3159821, at *7 (D. Del. Nov. 3, 2006); *Hajoca Corp. v. Sec. Trust Co.,* 41 Del. 514, 25 A.2d 378, 382 (Del. Super. Ct. 1942); *Paul v. Deloitte & Touche, LLP,* 974 A.2d 140, 146 (Del. 2009).

***Proposed Jury Instruction No. 40:  Common Law Breach Of Contract – Foreseeability***

A party that is harmed by a breach of contract is entitled to damages in an amount calculated to place the injured party in the same position it would have been in if the contract had been performed.

However, damages should not act as a windfall and cannot be recovered unless Tesla is able to allege and prove that the particular condition which made the damage a possible and likely consequence of the breach was known to the Mr. Budd at the time the contract was made.

Tesla must prove by a preponderance of the evidence that Mr. Budd was aware that his conduct made the damages Tesla claims a likely consequence of Mr. Budd's breach of the employment agreement.  In other words, Mr. Budd is not liable for damages that he could not reasonably have foreseen at the time he entered into his employment agreement.  Tesla may only recover for damages that Mr. Budd could reasonably have foreseen -- at the time he entered into the employment agreement -- that Tesla would suffer if Mr. Budd breached the agreement in the ways that Tesla has claimed and actually proven by a preponderance of the evidence.


**SOURCE**:  *Hajoca Corp. v. Sec. Trust Co*., 25 A.2d 378, 382 (Del. Super. Ct. 1942); *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009).

59

***Proposed Jury Instruction No. 41:  Common Law Breach Of Contract – Duty To Mitigate Damages***

Generally, the measure of damages for one who is harmed by a breach of contract is tempered by a rule requiring that the injured party make a reasonable effort, whether successful or not, to mitigate or minimize the losses suffered.  To mitigate a loss means to take steps to reduce the loss.  If an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have produced under the same circumstances.  This reduction, however, must be measured with reasonable probability.

With respect to the mitigation defense, Mr. Budd has the burden of proving by a preponderance of the evidence:

1.    that Tesla failed to use reasonable efforts to mitigate damages; and

2.    the amount by which damages would have been mitigated.

If you find that Tesla did not make a reasonable effort to mitigate its losses, or that Tesla could have taken action to lessen the damages Tesla alleges that it suffered, then you have found that Tesla failed to mitigate its losses and any damage award to Tesla must be reduced by the amount of damages that Tesla could have mitigated had Tesla taken such reasonable efforts.

**SOURCE**: *Lynch v. Vickers Energy Corp.,* 429 A.2d 497, 504 (Del. 1981); *Nash v. Hoopes,* 332 A.2d 411, 414 (Del. Super. Ct. 1975); *Katz v. Exclusive Auto Leasing, Inc.,* 282 A.2d 866, 868 (Del. Super. Ct. 1971); DEL. P.J.I. CIV. § 5.3 (2000).

***Proposed Jury Instruction No. 42: Common Law Breach Of Contract – Superseding Cause***

In this case, Tesla alleges that Mr. Budd's actions were the only direct cause of Tesla's injuries. Just because Mr. Budd may have set in motion the chain of events that caused Tesla's injuries does not mean that Mr. Budd is liable to Tesla.

One cause of injury may come after an earlier cause of injury. The second is called an intervening cause. The fact that an intervening cause occurs does not automatically break the chain of causation arising from the original cause. There may be more than one proximate cause of an injury. Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result.

In order to break the original chain of causation, the intervening cause must also be a superseding cause, that is, the intervening act or event itself must not have been anticipated nor reasonably foreseen by the person causing the original injury. An intervening causal act will relieve from liability the person who originally committed some causal act if at the time of the original act, the person who committed it would not reasonably have realized that another's act might cause harm; or if a reasonable person would consider the occurrence of the intervening act as highly extraordinary.

Tesla alleges that it was not awarded six project jobs because of the conduct of Mr. Budd. If you find that Mr. Budd did not have any control over whether Tesla would be awarded any of those six project jobs, or that Tesla was not awarded any of those six project jobs for reasons having nothing to do with Mr. Budd, then there can be no recoverable damages, and you must find in favor of Mr. Budd.

Therefore, if someone else's actions, coming after Mr. Budd's actions, were a distinct and unrelated cause of the injuries, and if those actions could not have been reasonably anticipated, then you may find the third party's actions to be the sole proximate cause of the injuries. If you so find, you must return a verdict in favor of Mr. Budd.

**SOURCE:**  *Delaware Elec. Coop. v. Duphily*, 703 A.2d 1202, 1209 (Del. 1997); *Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 829-30 (1995); *Sears Roebuck & Co. v. Huang*, 652 A.2d 568, 573-74 (Del. 1995); *Sirmans v. Penn*, Del. Supr., 588 A.2d 1103, 1106-07 (1991); *Nutt v. GAF Corp.*, 526 A.2d 564, 566 (Del. 1987); *McKeon v. Goldstein*, 164 A.2d 260, 262 (Del. 1960); *Paris v. Wilmington Medical Center Inc.*, No. CIV. A. 80C-NO-14, 1987 WL 9065, at *1 (Del. Super. Ct. Feb. 13, 1987).

***Proposed Jury Instruction No. 43:  Misappropriation Of Trade Secrets Under The Delaware Uniform Trade Secrets Act – Essential Elements***

To establish a violation of the Delaware Uniform Trade Secret Act, Tesla must prove each of the following elements:

(1) that a trade secret existed;

(2) that the trade secret was communicated to Mr. Budd by Tesla;

(3) pursuant to an express or implied understanding that the secrecy of the trade secret would be respected; and

(4) disclosure of the trade secret caused injury to Tesla.

**SOURCE**:  *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. CIV.A. 3290-VCP, 2009 WL 1387115, at *20-21 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010).

***Proposed Jury Instruction No. 44:  Misappropriation Of Trade Secrets Under The Delaware Uniform Trade Secrets Act – Existence Of A Trade Secret***

To show that a trade secret existed, Tesla must prove that there was information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(a) derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) was the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Information must meet both requirements to be considered a trade secret.  Vague and generic references to business plans, proposals, methods, and strategies do not constitute trade secrets.  Similarly, information consisting simply of business possibilities or goals is not a trade secret.  Undeveloped ideas and plans concerning future improvements in the plaintiff's process are not protectable as trade secrets.

A plaintiff asserting misappropriation of an idea must establish that the concept is sufficiently novel to be entitled to legal protection.  An idea, whether embodied in a product and called a trade secret or otherwise reduced to concrete form, must demonstrate novelty and originality to be protectable as a property right under any cause of action for its unauthorized use.  Simply applying a pre-existing, well-known concept does not qualify as a trade secret.

In addition, to determine that a trade secret exists you must first decide whether the information was indeed secret when Mr. Budd's allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets.  Once a business concept has been implemented in the marketplace, it is no longer a secret.  Nor can information be considered a trade secret if it would be ascertainable with

64

reasonable ease from publicly available information.  In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

Absolute secrecy is not necessary for information to qualify as a trade secret. There is no requirement that no one else in the world possess the information. Rather, Tesla must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.  However, Tesla must prove that it took reasonable measures to protect the secrecy of its trade secret. There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation.  Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1.      whether Tesla made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2.      whether Tesla required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3.      whether Tesla restricted access to the information on a "need to know" basis;

4.      whether Tesla generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

A trade secret must also be valuable either to Tesla or to its business rivals in the sense that, as long as it is secret, the information provides Tesla with an actual or potential competitive business advantage over its rivals. To help you determine whether Tesla enjoyed either an actual or potential competitive advantage, you may consider such things as:

1.      the degree to which the information was generally known or readily ascertainable by others;

2.     the extent to which Tesla used or uses the information in its business;

3.     whether the information allows Tesla to earn increased profits or operate its

business more efficiently;

4.     what gain or benefits Mr. Budd obtained from the information;

5.     what money, effort, and time Tesla expended to develop the information; and

6.     the ease or difficulty of acquiring or duplicating the information through

independent development, research of publicly available information, or taking apart and

analyzing a product properly acquired to learn its secrets (a process called "reverse

engineering").

**SOURCE**: 6 Del. C. § 2001(4); *Dionisi v. DeCampli,* No. 9425, 1995 WL 398536, *11 (Del. Ch. Jun. 28, 1995); *Dow Chemical Canada Inc. v. HRD Corp.,* 909 F. Supp. 2d 340, 347-48 (D. Del. 2012); *Glynn Interactive, Inc. v. Itelehealth, Inc.*, No. CIV.A. DKC2003-0449, 2004 WL 439236 at *5 (D. Md. Mar. 9, 2004); *IDX Systems Corp. v. Epic Systems, Corp.,* 165 F. Supp. 2d 812, 816-17 (W.D. Wis. 2001); *Savor, Inc. v. FMR Corp.*, No. CIV.A.00C-10-249-JRS, 2001 WL 541484, at *3 (Del. Super. Apr. 24, 2001), *aff'd*, 812 A.2d 894 (Del. 2002); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *Gusler v. Kawasaki Motors Corp.*, 216 F.3d 1083, 1083 (9th Cir. 2000); *Model Jury Instructions: Bus. Torts Litig.*, § 8.3.1, § 8.3.2, § 8.3.3.

***Proposed Jury Instruction No. 45:  Misappropriation Of Trade Secrets Under The Delaware Uniform Trade Secrets Act – Misappropriation Element***

Tesla must also prove that Mr. Budd misappropriated Tesla's trade secrets. Misappropriation is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Improper means is the "theft, bribery, misrepresentation, breach, inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Acquisition of documents and information through the normal course of employment is not "improper means." Mr. Budd's use of general knowledge or skills acquired while in the employ of another does not constitute misappropriation.

Moreover, Tesla must prove that there was disclosure or use of a trade secret without express or implied consent by Mr. Budd, who  at the time of disclosure or use, knew or had reason to know that his knowledge of the trade was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.  That is, Tesla must show that Mr. Budd disclosed the trade secret to another party, while knowing or having reason to know that his knowledge of the trade secret was improper.  Tesla must prove that Mr. Budd made use of Tesla's alleged trade secrets in a substantially similar competing business.

**SOURCE**: 6 Del. C. § 2001(2)(b)(2)(B), (C); *Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, No. CIV.A. 7866-VCP, 2014 WL 897223, at *16-17 (Del. Ch. Mar. 5, 2014); Proximate Cause § 21.1, DEL. P.J.I. CIV. § 21.1 (2000); *Edix Media Group, Inc. v. Mahani*, No. CIV.A. 2186-N, 2006 WL 3742595, at *13 (Del. Ch. 2006); *Great American Opportunities, Inc. v. Cherrydale*, No. CIV.A. 3718-VCP, 2010 WL 338219, at *23 (Del. Ch. Jan. 29, 2010); *Wilmington Trust Co. v. Consistent Asset Mgmt., Co.*, No. CIV. A. 8867, 1987 WL 8459, at *5-6 (Del. Ch. Mar. 25, 1987); *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 318 F. Supp. 2d 205, 215 (D. Del. 2004).

67

***Proposed Jury Instruction No. 46:  Misappropriation Of Trade Secrets Under The Delaware Uniform Trade Secrets Act – Damages Arising From Violation***

Tesla must prove that it suffered damages arising from a violation of the Delaware Uniform Trade Secrets Act.  If you find: (i) that a trade secret existed, (ii) that the trade secret was communicated to Mr. Budd by Tesla, (iii) pursuant to an express or implied understanding that the secrecy of the trade secret would be respected, and (iv) disclosure of the trade secret caused injury to Tesla, then you may award damages to Tesla.

Tesla alleges that Mr. Budd violated the Delaware Uniform Trade Secrets Act and caused Tesla to lose business as a result of Mr. Budd's conduct.  Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result.  If there are many possible reasons that Tesla may have lost business, and Tesla has not shown that it is more likely than not that the lost business was caused by Mr. Budd's alleged misappropriation of trade secrets, then Tesla has not proven that Mr. Budd caused injury to Tesla.

Other reasons Tesla may have lost business include but are not limited to: Related's decision not to award any further projects to Tesla or to further finance Tesla's operations, Tesla's prior performance on jobs, a lack of independent means to finance itself, a lack of working capital, a lack of customers, or the absence of a proven track record.

**SOURCE**: *Total Care Physicians, P.A. v. O'Hara,* No. CIV.A. 99C-11-201JRS, 2003 WL 21733023, at *2 (Del. Sup. Ct. July 10, 2003); *Edix Media Grp., Inc. v. Mahani,* No. CIV.A. 2186-N, 2006 WL 3742595, at *13 (Del. Ch. Dec. 12, 2006).

*Proposed Jury Instruction No. 47:  New York Common Law Misappropriation Of Trade Secrets – Essential Elements*

To establish a claim of common law misappropriation of trade secrets, Tesla must prove that (i) it possessed a trade secret, (ii) Mr. Budd used that trade secret in breach of an agreement, confidential relationship, or duty, or as a result of discovery by improper means, and (iii) as a result Tesla suffered damage.

Under New York common law, a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it."

To determine whether information is in fact a trade secret under the common law you must consider the following factors:  (i) the extent to which the information is known outside of the business; (ii) the extent to which it is known by employees and others involved in the business; (iii) the extent of measures taken by the business to guard the secrecy of the information; (iv) the value of the information to the business and its competitors; (v) the amount of effort or money expended by the business in developing the information; and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others.

In addition, a plaintiff asserting misappropriation of an idea must establish that the concept is sufficiently novel to be entitled to legal protection.  Without novelty, no cause of action for misappropriation exists.  To establish novelty, an idea need not reflect the flash of genius, but it must show genuine novelty and invention, and not a merely clever or useful adaptation of existing knowledge.

If you find: (i) that Tesla possessed a trade secret, (ii) that Mr. Budd used that trade secret in breach of an agreement, confidential relationship, or duty, or as a result of discovery by

improper means, and (iii) that as a result, Tesla suffered damage, then you may award Tesla damages.

Tesla alleges that Mr. Budd misappropriated Tesla's trade secrets and as a direct result caused Tesla to lose business. Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result. If there are many possible reasons that Tesla may have lost business, and Tesla has not shown that it is more likely than not that the lost business was caused by Mr. Budd's alleged misappropriation of trade secrets, then Tesla has not proven that Mr. Budd caused injury to Tesla.

Other reasons Tesla may have lost business include but are not limited to: Related's decision not to award any further projects to Tesla or to further finance Tesla's operations, Tesla's prior performance on jobs, a lack of independent means to finance itself, a lack of working capital, a lack of customers, or the absence of a proven track record.

**SOURCE** *Stanacard, LLC v. Rubard, LLC*, No. 12 CIV. 5176, 2016 WL 462508, at *18 (S.D.N.Y. Feb. 3, 2016); *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993); Restatement of Torts § 757, comment b; *Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364, 374 (S.D.N.Y. 1999); *Lehman v. Dow Jones & Co., Inc.*, 783 F.2d 285, 299-300 (2d Cir. 1986); *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 844 (Sup. Ct. N.Y. Cty. 1970).

***Proposed Jury Instruction No. 48: Common Law Conversion Of Confidential Information –
Essential Elements***

There are three elements to a claim for conversion of confidential information. To show

that Mr. Budd converted Tesla's confidential information, Tesla must show that:

(1) Tesla had a property interest in the confidential information;

(2) Mr. Budd wrongfully exerted dominion over the confidential information; and

(3) Tesla sustained damages as a result.


**SOURCE**: *Sustainable Energy Generation Grp., LLC v. Photon Energy Projects B.V.*, No.
CIV.A. 8524-VCP, 2014 WL 2433096, at *14 (Del. Ch. May 30, 2014).

***Proposed Jury Instruction No. 49:  Common Law Conversion Of Confidential Information – Tesla's Property Interest***

In order to prove that Mr. Budd converted Tesla's confidential information, Tesla must first show that it had a property interest in the information at issue.

If Tesla cannot show that it had a property interest in the information at issue, it cannot prove that Mr. Budd converted the information.

You must also determine whether Mr. Budd acquired the information through a confidential relationship with Tesla.

To determine whether the alleged confidential information was disclosed to Mr. Budd through a confidential relationship, you may consider whether, based on the dealings between the parties, Mr. Budd knew or should have known that Tesla expected the information to be kept secret and whether Tesla's expectation was reasonable.

**SOURCE:** *Gould v. Gould*, No. CIV.A. 3332-VCP, 2012 WL 3291850, at *10 (Del. Ch. Aug. 14, 2012), *judgment entered*, No. CIV.A. 3332-VCP, 2012 WL 6621742 (Del. Ch. Aug. 14, 2012); *Walton v. Snow*, No. CIV.A.CPU4-13-000791, 2014 WL 820579, at *7 (Del. Com. Pl. Feb. 28, 2014); *Model Jury Instructions: Bus. Torts Litig.*, § 8.4.2.

***Proposed Jury Instruction No. 50:  Common Law Conversion Of Confidential Information –***
***Wrongful Dominion***

You must determine whether Mr. Budd intentionally and without authority, assumed or exercised control over a property interest belonging to Tesla, interfering with Tesla's right of possession.

An essential element of conversion is "unauthorized dominion" to the exclusion of the rights of the plaintiff.  Therefore, Tesla must prove that Mr. Budd excluded Tesla from possession or use of the confidential information.

Tesla must prove that it did not have access to the alleged confidential information as a result of Mr. Budd wrongfully exercising dominion over the alleged confidential information.

If you find that Tesla possessed a copy of the alleged confidential information and was not deprived of possession or use of that information, then Tesla has not proven its claim for common law conversion of confidential information, and you must find for Mr. Budd on this claim.

**SOURCE:**  *SBIW, Inc. v. Gen. Elec. Co.,* No. 10 CIV. 7812 PGG, 2013 WL 5338525, at *13 (S.D.N.Y. Sept. 24, 2013); *Hyo Jung v. Chorus Music Studio, Inc.*, No. 13-CV-1494 CM RLE, 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014).

73

***Proposed Jury Instruction No. 51:  Common Law Conversion Of Confidential Information –
Sustaining Damages***

Tesla claims that it has suffered damages from Mr. Budd converting Tesla's confidential information.  If you find that Mr. Budd intentionally and without authority, assumed or exercised control over a property interest belonging to Tesla, interfering with Tesla's right of possession, then you should consider whether Tesla has suffered monetary damages as a result. You should address the issue of damages, however, only if you first determine that Mr. Budd is liable to Tesla on any of the bases we have discussed previously.

Tesla must also show that this conversion of confidential information was the proximate cause of injury to Tesla.  Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred.  A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result.

If you find that Mr. Budd's conversion of confidential information directly produced the harm claimed by Tesla, and that the harm would not have occurred if not for Mr. Budd's conversion, then you may find that Mr. Budd converted Tesla's confidential information and thereby damaged Tesla.

**SOURCE:**  Proximate Cause § 21.1, DEL. P.J.I. CIV. § 21.1 (2000); *CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, No. CIV.A.06C-01-236 JRS, 2008 WL 2586694, at *3 (Del. Super. June 6, 2008); *Model Jury Instructions: Bus. Torts Litig.*, § 8.6.

***Proposed Jury Instruction No. 52:  Common Law Breach Of Fiduciary Duty – Essential Elements***

For Tesla to prevail on its claim for breach of fiduciary duty, Tesla must prove each of the following elements by a preponderance of the evidence:

1.     that Mr. Budd owed Tesla a fiduciary duty;

2.     that Mr. Budd breached the fiduciary duty he owed to Tesla; and

3.     that Mr. Budd's breach of fiduciary duty was the proximate cause of some injury or damage to Tesla.

I will review each of these elements more specifically in the following instructions.

If after you consider all of the evidence you find that Tesla has proven each of these elements in accordance with the legal requirements as I describe them to you, then your verdict must be for Tesla on this claim and you will consider the amount of money damages to be awarded to Tesla, by following the instructions that I will give you relating to damages.

If, on the other hand, you find that Tesla has not proven each of these required elements, then your verdict must be for Mr. Budd.

**SOURCE**: *Model Jury Instructions: Bus. Torts Litig.*, § 7.2; *Heller v. Kiernan*, No. CIV.A. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013);  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

***Proposed Jury Instruction No. 53:  Common Law Breach Of Fiduciary Duty – Existence Of Fiduciary Duty***

A fiduciary relationship exists between two persons when one of them is under a duty to act for, or to give advice for, the benefit of the other upon matters within the scope of the relation.  The duties that arise under such a relationship may include the duty of care and duty of loyalty, which I will define in the next section.

It is for you to determine whether a fiduciary relationship existed between Tesla and Mr. Budd at the time of the alleged misconduct.  If you determine that relationship did exist, you must next determine the scope of the fiduciary relationship and whether one or more of the duties listed above arose within the scope of the relationship.  If the alleged misconduct was outside of the scope of the relationship, then you must find for Mr. Budd on this claim.  If you find the existence of a fiduciary relationship and that the alleged misconduct was within the scope of one of the duties listed above, then you should consider in what respect that Mr. Budd purportedly breached that duty.

**SOURCE**:  *Model Jury Instructions: Bus. Torts Litig.*, § 7.3.1; *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013);  *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 51 (Del. 2006).

***Proposed Jury Instruction No. 54:  Common Law Breach Of Fiduciary Duty – Violation***

In connection with Tesla's claim for breach of fiduciary duty, Tesla must prove that Mr. Budd breached that duty.

Corporate officers and directors are not allowed to use their position of trust and confidence to further their private interests.

Corporate officers and directors have a fiduciary duty to the corporation.  That means they have a duty to protect the interests of the corporation, and also a duty to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which their skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers.

The rule that requires an undivided and unselfish loyalty to the corporation demands that there be no conflict between duty and self-interest.  When an employee places his own interest and self-gain above that of the company, there is a violation of the duty of loyalty.

However, a plaintiff has no claim for breach of fiduciary duty where an employee acts in good faith outside his employment, even though it may adversely affect his employer's business.

An employee is permitted to make arrangements to compete with his employer before terminating his employment, so long as he acts fairly and does not injure his employer.  Even for directors and key management personnel, the demands of undivided loyalty to the corporation are tempered by the importance of protecting free competition in the marketplace.  Such competition is fostered by allowing even key employees to make preparations to compete with their employers before leaving their positions, without incurring liability for breach of fiduciary duty.

77

In addition, where the parties knew that their business relationship was terminating then the parties' relationship continued simply to windup the affairs of the relationship in a manner serving the best interests of the parties. Accordingly, Mr. Budd's preparation for his departure from Tesla is protected under the law if you find that Tesla was preparing to wind down its business or cease operations after completing its existing projects.

**SOURCE:** *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939); *Science Accessories Corp. v. Summagraphics Corp.,* 425 A.2d 957, 962 (Del. 1980); *Dionisi v. DeCampli*, No. 9425, 1995 WL 398536, at *10 (Del. Ch. June 28, 1995), *amended,* No. CIV. A. 9425, 1996 WL 39680 (Del. Ch. Jan. 23, 1996).

***Proposed Jury Instruction No. 55:  Common Law Breach Of Fiduciary Duty Affirmative
Defense – Estoppel***

When the conduct of a party intentionally or unintentionally leads another party, in
reasonable reliance on that conduct, to change its position to its detriment, then the original party
cannot enforce a right contrary to the second party's changed position.  This is known in the law
as estoppel.  Reasonable reliance means that the party that changed its position must have lacked
the means of knowing the truth about the facts in question.

In order to prove the affirmative defense of estoppel, Mr. Budd must prove:

1)    that there was a fiduciary relationship between Tesla and Mr. Budd;

2)    that Mr. Budd changed his position to his detriment because of Tesla's conduct
through Mr. Ruthling's telling Mr. Budd that it was acceptable for Mr. Budd while still
employed at Tesla to seek alternate employment; and

3)    that Mr. Budd reasonably relied on the conduct of Tesla.

If you find that Mr. Ruthling told Mr. Budd that he could look for other employment, and
that Mr. Budd relied on Mr. Ruthling's statement and believed that he should actively seek new
employment because Tesla was going to shut down its operations or effectively stop doing
business, then Mr. Budd has proved estoppel.  In that event, you should find that Mr. Budd did
not breach a fiduciary duty to Tesla.

You must determine whether Mr. Budd has proved all of the above elements of this
affirmative defense by clear and convincing evidence.

**SOURCE**:  *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. Supr. 1990); *Wilson v. American
Ins. Co.*, 209 A.2d 902, 903-04 (Del. Supr. 1965); *Reeder v. Sanford Sch., Inc.*, 397 A.2d 139,
141-42 (Del. Supr. 1979); *National Fire Ins. Co. v. Eastern Shore Laboratories, Inc.*, 301 A.2d
526, 529 (Del. Supr. 1973).

79

**_Proposed Jury Instruction No. 56:  Common Law Breach Of Fiduciary Duty – Causation_**

If you find that Mr. Budd breached a fiduciary duty to Tesla, you should then decide whether that breach proximately caused any losses claimed by Tesla.  Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred.  A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result.

I shall now instruct you on the law and burden of proof regarding proximate cause.

To find Mr. Budd liable for breach of fiduciary duty, the breach must have caused Tesla damage.  Mr. Budd's alleged breach is the cause of damage only when (1) Tesla has sustained or will sustain a loss of some type, (2) Mr. Budd's act or omission was the cause-in-fact of the loss sustained, and (3) Mr. Budd's act or omission was the legal cause of the loss sustained.  Tesla bears the burden of proving all three of these elements.

An act, even if wrongful, may or may not cause an injury and if it causes no injury, there can be no liability.  Consequently, Tesla must prove that it suffered or will suffer such injury to recover damages.  Otherwise there can be no liability for breach of a fiduciary duty, and you must find for Mr. Budd.

To prove that a breach of fiduciary duty was the cause-in-fact of Tesla's injury, Tesla must establish not only that it has suffered some loss, but also that Tesla would not have suffered that loss if Mr. Budd had performed his fiduciary duties as required.  If you find that Tesla would have suffered its claimed loss of projects from Related whether or not Mr. Budd breached his fiduciary duties, then Tesla has not proven a right to any damages and you must find for Mr. Budd.

If you find that Tesla has proved the existence of damages and cause-in-fact, then you must decide whether Tesla has proved that Mr. Budd's acts or omissions were the "legal cause" of Tesla's injuries or losses.  The issue you must decide under this element is whether the relationship between Tesla's acts or omissions and the losses sustained by Tesla is sufficiently close to attribute the losses to Mr. Budd.  Tesla must prove two things to show legal cause: (1) that Mr. Budd's acts or omissions were substantial factors in bringing about the loss, and (2) that the likelihood of injury would have been foreseeable to persons in Mr. Budd's positions under similar circumstances.

You must weigh the evidence and decide whether Mr. Budd's acts or omissions were substantial factors in bringing about the losses and, if so, whether the losses sustained were reasonably foreseeable to persons in his position.  If you find that Tesla has not proven both elements, there can be no liability for any losses that Tesla may have sustained, and you must find for Mr. Budd.

**SOURCE:**  *Model Jury Instructions: Bus. Torts Litig.*, § 7.5, § 7.5.1 - § 7.5.4; *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939).

***Proposed Jury Instruction No. 57:  Damages Generally***

I will next instruct you on damages.  You must not take these instructions as implying my view about which party is entitled to your verdict in this case.  Instructions regarding the measure of damages are given for your guidance in the event you find in favor of Tesla from a preponderance of evidence in the case in accordance with the other instructions.

If, under the instructions I have given you, you find that Tesla is entitled to a verdict against Mr. Budd, then you may award Tesla damages in an amount that will reasonably compensate it for its losses, provided you find that such loss suffered by it was proximately caused by the act or omission upon which you base the Mr. Budd's liability.

To determine whether a loss was proximately caused by the act or omission upon which you base the Mr. Budd's liability, you must find that Mr. Budd directly caused the loss, and but for which the loss would not have occurred.  A proximate cause brings about the injury, and it must have been necessary to the result.  If you find that the evidence presented showed that no loss was caused because of Mr. Budd's actions, or that the loss was caused by acts of individuals or entities other than Mr. Budd, or that the loss would have been sustained regardless of Mr. Budd, then Tesla has not proved causation and you should not award Tesla any damages.

Damages must be reasonable.  If you find that Tesla is entitled to a verdict, you may award it only the amount of damages necessary to compensate it reasonably for any losses actually caused by Mr. Budd's alleged conduct.  Tesla must prove by a preponderance of the evidence that such losses were sustained as a proximate result of Mr. Budd's alleged conduct.

You are not permitted to award speculative damages.  This means that you may not include any compensation in the verdict for any prospective loss that, although possible, is not reasonably certain to happen in the future.  From the evidence presented, you must decide what

losses Tesla proved by a preponderance of the evidence are reasonably certain to occur, and you may award damages only for those losses.

Because the losses must be established by substantial evidence and not be left to speculation, a stricter standard is imposed for a new business seeking to recover for loss of future profits, for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty. If you find that Tesla was a new business at the time of the alleged breaches, based either on its stage of development or based on whether it had any customers or future prospects, then you must scrutinize whether there is a reliable, non-speculative means of ascertaining whether the business could have become profitable.

In awarding damages, if you decide Tesla has proven its claim, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. The law does not require that Tesla prove the amount of his or her losses with mathematical precision, but it must prove such damages with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence, and not based on sympathy or any other emotional factor.

If you find in favor of Tesla on its claims against Mr. Budd, then you must consider and decide the amount of money damages to be awarded to Tesla. Tesla has the burden of proving damages by a preponderance of the evidence.

You may consider the testimony given by the expert witnesses that have testified at trial in connection with your determination regarding damages. However, as I instructed you

previously, it is entirely up to you whether to give any weight at all, and if so, what weight, to an

expert's testimony on the subject of damages or any other subject..


**SOURCE:**  3B Fed. Jury Prac. & Instr. § 162:320 (6th ed.); 4 Modern Fed. Jury Instr.-Civil
82.03; 4 Modern Fed. Jury Instr.-Civil 77.01, 77-3; *Model Jury Instructions: Bus. Torts Litig.*, §
7.6.1, § 7.6.2; *Re v. Gannett Co.*, 480 A.2d 662, 668 (Del. Super. 1984), *aff'd*, 496 A.2d 553
(Del. 1985); *Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 261 (1986); *24/7 Records, Inc. v.
Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 316 (S.D.N.Y. 2008).

***Proposed Jury Instruction No. 58:  Effect Of Instruction As To Damages***

The fact I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of Tesla by a preponderance of the evidence in the case in accordance with the other instructions.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:02 (6th ed.).

***Proposed Jury Instruction No. 59:  Exemplary Damages Under The Delaware Uniform Trade Secrets Act***

The Delaware Uniform Trade Secrets Act allows a jury to award exemplary damages, also known as punitive damages, if the jury finds that the defendant acted both willfully and maliciously.  Evidence of misappropriation alone is not sufficient to demonstrate willful and malicious conduct.  Nor does general evidence of malice toward the plaintiff without more justify the imposition of exemplary damages and attorney's fees.  To recover exemplary damages and attorney's fees under DUTSA, Tesla must demonstrate that Mr. Budd acted maliciously in the misappropriation of trade secrets.  To prove such willfulness, Tesla must demonstrate "an awareness, either actual or constructive, of one's conduct and a realization of its probable consequences."  Malice requires a showing of "ill-will, hatred or intent to cause injury."

In other word, you cannot award exemplary or punitive damages with respect to any claimed violation of DUTSA unless you find by a preponderance of the evidence that Mr. Budd acted deliberately and with intent to harm Tesla.  However, if you find that Mr. Budd either did not act deliberately, or did not intend to harm Tesla, you may not award any exemplary or punitive damages.

**SOURCE**:  6 Del. C. § 2003(b); 6 Del. C. § 2004; *Beard Research Inc. v. Kates,* 8 A.3d 573, 601 (Del. Ch. 2010); *Wayman Fire Prot., Inc. v. Premium Fire & Sec.*, LLC, No. CIV.A. 7866-VCP, 2014 WL 897223, at *17 (Del. Ch. Mar. 5, 2014), *judgment entered sub nom., Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC* (Del. Ch. July 1, 2014); *Marsico v. Cole*, No. CIV. A. 13104, 1995 WL 523586, at *8 (Del. Ch. Aug. 15, 1995).

***Proposed Jury Instruction No. 60:  Punitive Damages Under Claims Other Than Delaware Uniform Trade Secrets Act And Breach Of Contract***

If you find for Tesla and against Mr. Budd and you have determined that Mr. Budd must pay damages, then you should consider whether the conduct that led to your decision also subjects Mr. Budd to punitive damages.  To award punitive damages other than with respect to the DUTSA and breach of contract claims, you must find that Mr. Budd's conduct that proximately caused actual damages to Tesla was the result of actual malice, wanton conduct, or oppressive conduct, as based on the instructions I will give you.

Punitive damages are different from compensatory damages.  Compensatory damages are awarded to compensate the plaintiff for the injury suffered.  Punitive damages, on the other hand, are awarded to punish a party for outrageous conduct and to deter a party, and others like him, from engaging in similar conduct in the future.  To award punitive damages, you must find by clear and convincing evidence that Mr. Budd acted intentionally.  Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like.

Clear and convincing evidence is a stricter standard of proof than proof by a preponderance of the evidence, which merely requires proof that something is more likely than not.  To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt.  Clear and convincing evidence means that proofs should produce in your mind a firm belief or conviction as to the truth of the allegations sought to be established.  The evidence must be so clear, direct and weighty and convincing as to enable you to come to a clear conviction, without hesitancy, of the truth of precise facts in issue.  The clear and convincing standard of proof requires more than a mere balancing of doubts or probabilities.  It requires clear evidence that causes you to be convinced that the allegations sought to be proved are true.

87

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and so dangerous that he knows or should know that there is an eminent likelihood of harm that can result. Each requires a determination whether Mr. Budd in fact foresaw that his conduct threatened a particular harm to Tesla.

You may find Mr. Budd's conduct to have been undertaken with actual "malice" sufficient to enable you to award punitive damages only if you find it to have been prompted or accompanied by personal ill will, spite, or hatred, either toward Tesla.

You may also award punitive damages if you find that Mr. Budd's conduct was "wanton," that is, that the conduct was undertaken in reckless or callous disregard of, or indifference to, Tesla's rights.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of Mr. Budd's conduct and the degree to which the conduct was proved by Tesla to be reprehensible. Finally, you may assess an amount of damages that will deter Mr. Budd and others like him from similar conduct in the future. You may consider Mr. Budd's financial condition when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to Tesla's compensatory damages. You do not need to award any punitive damages at all unless you find all of the above factors to have been met and also determine it appropriate to award such damages on top of those you award in compensatory damages. In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff. If

you find that Tesla is entitled to an award of punitive damages, state the amount of punitive

damages separately on the verdict form.

**SOURCE**: *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408 (2003); *BMW of North American, Inc. v. Gore, 517* U.S. 559, 575 (1996); *Wilhelm v. Ryan,* 903 A.2d 745, 752 (Del. Jul. 18, 2006); *Gannett Co. v. Kanaga,* 750 A.2d 1174, 1190 (Del. 2000); *Devaney v. Nationwide Mut. Auto Ins. Co.,* 679 A.2d 71, 76-77 (Del. 1996); *Tackett v. State Farm Fire and Cas. Ins. Co.,* 653 A.2d 254, 265-66 (Del. 1995); DEL. P.J.I. CIV. § 5.5 (2000); *Model Jury Instructions: Bus. Torts Litig.,* § 7.6.5; *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 330 (Sup. Ct. N.Y. Cty. 2005).

***Proposed Jury Instruction No. 61:  Effect Of Instruction As To Exemplary And Punitive Damages***

The fact that I have instructed you about the proper measure of exemplary and punitive damages should not be considered as an indication that Tesla is entitled to recover punitive damages from Mr. Budd.  The instructions on exemplary and punitive damages are given only for your guidance, in the event you find in favor of Tesla on its claims for punitive damages.

**SOURCE**: 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS 74.02 (4th ed. 1987).

## IV.  PROPOSED CONCLUDING INSTRUCTIONS

I will now provide you with general instructions concerning how you should go about arriving at your verdict.  Your verdict is your decision regarding the facts in this case.

***Proposed Jury Instruction No. 62:  Right To See Exhibits And Hear Testimony; Communications With Court***

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony -- in fact any communication with the Court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a verdict is reached.

**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-1.

91

***Proposed Jury Instruction No. 63:  Communications Between Court And Jury During Jury's
Deliberations***

      If it becomes necessary during your deliberations to communicate with me, you may send

a note by a marshal, signed by your foreperson or by one or more members of the jury.  No

member of the jury should ever attempt to communicate with me by any means other than a

signed writing.  I will never communicate with any member of the jury on any subject touching

the merits of the case otherwise than in writing, or orally here in open court.


**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:08 (6th ed.).

***Proposed Jury Instruction No. 64:  Duty To Deliberate***

Your verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

In order to prevail on a claim, Tesla must sustain its burden of proof by a preponderance of the evidence with respect to each element of that claims.  If you find that Tesla has succeeded in doing so for a claim, you should return a verdict in its favor on that claim.  If you find that Tesla failed to sustain its burden on any element of any of its claims, you should return a verdict against Tesla for that claim.

Similarly, if you find that Mr. Budd has failed to sustain his burden with respect to any element of its affirmative defenses, you must return a verdict against Mr. Budd on that affirmative defense.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is in error.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.


**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:01 (6th ed.).

***Proposed Jury Instruction No. 65:  Election Of Foreperson***

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesperson here in court.

Verdict forms have been prepared for your convenience.

*[Read forms of verdict]*.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree.  You will then return with your verdict to the courtroom.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:04 (6th ed.).

***Proposed Jury Instruction No. 66:  Verdict Forms – Jury's Responsibility***

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:07 (6th ed.).

95

***Proposed Jury Instruction No. 67:  Return Of Verdict***

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in Court.  Once your verdict is announced by your foreperson in open Court and officially recorded, it cannot ordinarily be revoked.


**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-6.

96

Dated: October 19, 2016

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____

Marc E. Kasowitz
(mkasowitz@kasowitz.com)
David E. Ross
(dross@kasowitz.com)
Seth Davis
(sdavis@kasowitz.com)
Jennifer S. Recine
(jrecine@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700

*Attorneys for Defendant Michael Budd*