ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/26/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

TESLA WALL SYSTEMS, LLC,

               Plaintiff,

- against -

MICHAEL BUDD,

               Defendant.

------------------------------X

14 Civ. 8564 (LLS)

OPINION & ORDER

     Defendant Michael Budd has moved to set aside the verdict and his pretrial motion, renewed at trial, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993) remains undecided.

1.

     On the tenth day of trial, difficult and strongly contested issues (many requiring choice between competing inferences) of liability for breach of fiduciary duty under Delaware law were presented to the jury (see closing arguments at Tr. 1321-1417), who resolved them in favor of plaintiff Tesla Wall Systems, LLC. Reasonable persons may differ with regard to that verdict, but it is supported by substantial evidence and will not be set aside.

2.

     A different situation prevails with respect to damages. The calculation tendered by plaintiff's expert John P. Garvey, while theoretically coherent, was so detached from and dismissive of the facts in the case that it is unacceptable. Unquestioningly accepting the assumptions furnished to him by plaintiff's counsel, he cannot be said to have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

     As summarized at pages 8-11 of Budd's December 27, 2016 brief (Dkt. No. 116):

1

- Garvey improperly characterized $9.6 million in loans to Tesla from Related as revenue, though as of July 2013 they were carried as liabilities on Tesla's books; Garvey admitted that if he had not relabeled the loans as revenue, his damages model would give Tesla *a zero or negative valuation* (Ex. 18 at 1007:03-1007:06);

- Garvey admitted there was no basis in the record for using a bid from Hudson Yards Tower A -- the building for which the $187 per square foot bid was submitted -- as a project comparable to any of the six buildings that were the subject of the first part of his valuation, and admitted that he had no experience in the curtain-wall industry on which to base that assumption (Ex. 18 at 959:11-959:15); and

* * *

- Garvey did not discount his valuation to address the fact that industry "superstar" Budd could, consistent with his contract, leave Tesla on 60 days' notice, and compete with Tesla six months after his resignation (Ex. 18 at 952:06-952:14), even though an investor would consider such facts to be important in valuing Tesla (Ex. 18 at 930:17-931:06);

- Tesla lost money every year it existed and lost money on every project (Ex. 18 at 889:09-889:13, 892:01-892:10, 971:21-972:01);

- Related was Tesla's only customer as of the valuation date, and Related was not required to award Tesla any jobs (Ex. 18 at 889:23-890:22); and

* * *

- Tesla had no capital as of July 2013 and therefore required outside funding to continue in the curtain-wall business (Ex. 18 at 989:18-992:01);

* * *

- Though Tesla had historical revenues of $33 million in its three years of operation between 2012-2014 (Ex. 18 at 879:16-879:21), Garvey assumed that in the next two years, 2015-2016, Tesla would have $289 million in revenue (Ex. 18 at 986:06-986:10);

- Although Tesla never obtained any third-party work despite its efforts to obtain such work (Ex. 18 at 1027:14-1027:20), Garvey assumed, while admitting it was "speculation," that Tesla would earn annual revenues of $175 million per year into perpetuity from contracts with as yet unknown customers (Ex. 18 at 868:01-869:01, 869:09-869:20);

- Garvey's opinion concluded that Tesla, a completely unprofitable start-up as of July 2013, would over the next two years, become four to five times more profitable than the industry curtain-wall leader (Ex. 18 at 1022:17-1022:20); and

- Garvey's valuation assumed that an arm's length, reasonable investor would have paid $64.5 million to $75 million to purchase Tesla in July 2013, even though Tesla never turned a profit, lost money on every contract, had millions in loans outstanding to Related, averaged a negative 29% profit margin, had no contract requiring Related to give it another job, had no third-party customers, had no financing, had no new equity investors, had no prospects, and its key employee could leave on 60 days' notice. (Ex. 18 at 1025:08-1029:18.)

* * *

The jury had no other guidance than Garvey's on damages, and that portion of the verdict cannot stand. A retrial of the damages issue is required. Fed. R. Civ. P. 59(a)(1)(A); see Hydrolevel Corp. v. Am. Soc. of Mech. Eng'rs, Inc., 635 F.2d 118, 131 (2d Cir. 1980), aff'd, 456 U.S. 556, 102 S. Ct. 1935 (1982).

## CONCLUSION

Defendant's motion to vacate the verdict and for judgment as a matter of law on liability (Question #1) is denied. As to damages (Question #2) it is granted to the extent that its Daubert motion is granted, plaintiff's expert's damage calculations is stricken, and the issue must be retried.

A schedule for the retrial of the issues of damages will be set at a conference to be set at counsels' convenience.

So ordered.

Dated:   New York, New York
         April 26, 2017

                                              _Louis L. Stanton_
                                              LOUIS L. STANTON
                                              U.S.D.J.